COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, Kelsey and Retired Judge Rosenblatt[*]
Argued at Richmond, Virginia


CITLAND, LTD.

                                                                    OPINION BY
v.             Record No. 0608-04-2            JUDGE D. ARTHUR KELSEY
                                                                    MARCH 22, 2005

COMMONWEALTH OF VIRGINIA, *ex rel.*
  JERRY W. KILGORE, ATTORNEY GENERAL


                FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                              Melvin R. Hughes, Judge

                Anthony F. Troy (Bryan M. Haynes; Troutman Sanders LLP, on
                briefs), for appellant.

                Francis S. Ferguson, Deputy Attorney General (Jerry W. Kilgore,
                Attorney General, Anne Marie Cushmac, Senior Assistant
                Attorney General, on brief), for appellee.


        This case presents the question whether the Attorney General can preclude a tobacco

manufacturer from doing business in the Commonwealth (by excluding it from the statutory

directory set up by Code § 3.1-336.5) solely on the ground that the manufacturer failed to pay

statutory penalties proposed by the Attorney General, but not yet adjudicated by the courts.  We

hold the governing statutes afford him no such discretion.  We reverse the circuit court's contrary

ruling and remand the case for further proceedings consistent with this opinion.


---

        [*] Retired Judge Alan E. Rosenblatt took part in the consideration of this case by
designation pursuant to Code § 17.1-400(C).

## I.

### A. THE STATUTORY FRAMEWORK

(i) *The 1998 Tobacco Settlement*

In 1998, Virginia and forty-five other states entered into a Master Settlement Agreement with the several major tobacco manufacturers. See generally Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 533 (2001); Star Scientific, Inc. v. Beales, 278 F.3d 339 (4th Cir. 2002) (upholding Virginia tobacco settlement statutes against various constitutional challenges). The parties intended the settlement to end further litigation between state governments and tobacco manufacturers. The states released the manufacturers from past and future liability in exchange for their agreement to abide by advertising and promotional restrictions and to make annual monetary payments to the states based on annual cigarette sales.

Not all tobacco manufacturers participated in the original settlement. For those that did not participate, the General Assembly enacted the Tobacco Escrow Act, Code § 3.1-336.1 *et seq.* The Act permits manufacturers to sell tobacco products in the Commonwealth if they either (i) join the master settlement agreement and comply with its terms, or (ii) make specified payments into an escrow fund intended to "guarantee a source of compensation and to prevent such manufacturers from deriving large, short-term profits and then becoming judgment-proof before liability may arise . . . ." 1999 Va. Acts, chs. 714, 754; see Code § 3.1-336.2(A). If they choose the latter option, the manufacturers must file annual certifications with the Attorney General verifying that they made the required escrow payments. See Code § 3.1-336.2(C).

(ii) *Enforcing Escrow Payment Obligations*

The Tobacco Escrow Act authorizes the Attorney General to "bring a civil action on behalf of the Commonwealth against any tobacco product manufacturer that fails to place into escrow the funds required under this section." Code § 3.1-336.2(C). Upon finding a

manufacturer liable, the "court" may assess a "civil penalty" against the manufacturer. Code § 3.1-336.2(C)(1) & (2). Depending on whether the court classifies the violation as knowing or inadvertent, the penalty can range from 5% to 300% of the delinquent amount. Id. When a court finds a "second knowing violation," the court can prohibit the manufacturer "from selling cigarettes to consumers within the Commonwealth" for up to two years. Code § 3.1-336.2(C)(3).

(iii) *Admission Into & Exclusion From The Directory*

In 2003, the General Assembly passed additional legislation to enhance the enforceability of the Tobacco Escrow Act. See 2003 Va. Acts, ch. 789 (Code §§ 3.1-336.3 to 3.1-336.16). These new provisions, commonly called the "Complementary Legislation," require the Attorney General to maintain a directory listing all manufacturers that have filed current and accurate certifications. See Code § 3.1-336.5(A). A manufacturer not listed in the directory may not sell any tobacco products in the Commonwealth. See Code §§ 3.1-336.6, 3.1-336.10.

Under Code § 3.1-336.5(A), the Attorney General "shall" list in the directory all manufacturers with "current and accurate certifications" in conformity with Code § 3.1-336.4. The Act provides two exceptions to this mandatory duty.

The first exception states that the Attorney General "shall not" include in the directory "any nonparticipating manufacturer that fails to provide the required certification or whose certification the Attorney General determines is not in compliance with subsections C and D of § 3.1-336.4, unless the Attorney General has determined that such violation has been cured to his satisfaction." Code § 3.1-336.5(A)(1). Subsections C and D of § 3.1-336.4 require that the certification include certain information, verify that the escrow fund has been established, and include a declaration that the manufacturer is in "full compliance" with the governing statutes.

The second exception makes clear no manufacturer can be included in the directory if the Attorney General concludes the required escrow funds "have not been fully paid" or the

manufacturer has not satisfied "all outstanding final judgments" for any statutory violation. Code § 3.1-336.5(A)(2).

Finally, Code § 3.1-336.11 subjects any "determination of the Attorney General to not list or to remove" a manufacturer from the directory to judicial review pursuant to the Virginia Administrative Process Act (VAPA), Code § 2.2-4000 *et seq.*

## B.   THE DISPUTE BETWEEN CITLAND & THE ATTORNEY GENERAL

Citland did not participate in the 1998 master settlement agreement.  In 2003, Citland submitted an application to the Attorney General for inclusion in the directory.  The Attorney General initially rejected the application, alleging that Citland had sold cigarettes in Virginia in 2001 and 2002 without filing the necessary certifications and depositing the appropriate escrow funds.  In response, Citland filed the appropriate certifications and fully funded the escrow account.

Citland again asked to be included in the directory.  The Attorney General again refused. Before being allowed into the directory, the Attorney General advised, Citland would have to pay a proposed statutory penalty of almost $150,000 for the earlier statutory defaults that allegedly occurred in 2001 and 2002.  Citland contested the amount of the proposed penalty and asserted legal defenses to its imposition.  Citland also argued that only a court, not the Attorney General, could impose statutory penalties.  Only the nonpayment of a judicially imposed penalty, Citland reasoned, could preclude it from being listed in the directory.  See Code § 3.1-336.5(A)(2).  The Attorney General disagreed, entered a final case decision excluding Citland from the directory, and advised Citland of its right of appeal under the VAPA.

Citland filed a VAPA appeal in circuit court seeking declaratory and injunctive relief. The circuit court received from the parties an agreed statement of facts.[1] Both parties conceded that Citland "satisfied all of the requirements" of the Attorney General "except one: Citland has not paid the penalties demanded by the Attorney General for Citland's alleged failure to timely establish and fund a qualified escrow account for sales in the Commonwealth during calendar years 2001 and 2002." Joint Statement of Record ¶ 15, at 4-5. After briefing and oral argument, the circuit court dismissed the appeal and denied Citland all of its requested relief. Citland now appeals to us, claiming the circuit court erred as a matter of law.[2] As it did below, Citland contends on appeal that the Attorney General has no discretion to exclude it from the directory for nonpayment of proposed penalties for alleged violations of the statute.

## II.

Under the VAPA, the governing standard of review depends on the nature of the controversy.[3] When the contest involves factfinding, we defer to the agency just as we would a jury or a trial court. See Mattaponi Indian Tribe v. Commonwealth, 43 Va. App. 690, 706, 601 S.E.2d 667, 675 (2004) (noting the court may reject agency factfinding "only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion" (citations omitted and emphasis in original)). Similarly, when the appellant challenges a

---

[1] In its final order, the circuit court adopted a "Joint Statement of Record" signed by both parties and made it "part of the record."

[2] Two days after Citland filed its VAPA appeal in the circuit court, the Attorney General filed a separate action in circuit court seeking the judicial imposition of civil penalties under Code § 3.1-336.2(C). The civil penalty proceeding is not before us.

[3] The same standard applies to the circuit court, as it does to us. "Under the VAPA, the circuit court reviews the agency's action in a manner 'equivalent to an appellate court's role in an appeal from a trial court.'" Mattaponi Indian Tribe v. Commonwealth, 43 Va. App. 690, 707, 601 S.E.2d 667, 676 (2004) (citations omitted). "In this sense, the General Assembly has provided that a circuit court acts as an appellate tribunal." Id.

judgment call on a topic on which "the agency has been entrusted with wide discretion by the General Assembly," we will overturn the decision only if it can be fairly characterized as "arbitrary or capricious" and thus a "clear abuse of delegated discretion." Vasaio v. Dep't of Motor Vehicles, 42 Va. App. 190, 196-97, 590 S.E.2d 596, 599 (2004) (citations omitted).

On the other hand, an "agency does not possess specialized competence over the interpretation of a statute merely because it addresses topics within the agency's delegable authority." Finnerty v. Thornton Hall, Inc., 42 Va. App. 628, 634, 593 S.E.2d 568, 571 (2004); see also 7-Eleven, Inc. v. Dep't of Envtl. Quality, 42 Va. App. 65, 73, 590 S.E.2d 84, 88 (2003) (*en banc*). Pure statutory construction, a matter within the "core competency of the judiciary," Finnerty, 42 Va. App. at 635, 593 S.E.2d at 571, requires *de novo* review. Mattaponi Indian Tribe, 43 Va. App. at 707, 601 S.E.2d at 675 (citation omitted). "This axiom stems from basic principles of separation of powers. 'It is emphatically the province and duty of the judicial department to say what the law is.'" Finnerty, 42 Va. App. at 635, 593 S.E.2d at 571 (quoting Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803)). It necessarily follows that the *a priori* question whether the statute delegates or withholds discretion is itself a question of statutory interpretation, one implicating our duty of *de novo* review.

Exercising this duty, we conclude that the General Assembly did not delegate to the Attorney General discretionary power to exclude manufacturers from the directory solely for nonpayment of proposed penalties. Code § 3.1-336.5(A) makes clear the Attorney General "shall" list in the directory all manufacturers with "current and accurate certifications" in conformity with Code § 3.1-336.4. "In its ordinary use, 'shall' is a word of command, and is the language of command, and is the ordinary, usual, and natural word used in connection with a mandate." Cirrito v. Cirrito, 44 Va. App. 287, 309, 605 S.E.2d 268, 279 (2004) (citations and

internal quotation marks omitted).[4]  Though exceptions exist to this statutory mandate, none apply to this case.  See Code § 3.1-336.5(A)(1) & (2).

Code § 3.1-336.5(A)(1) granted the Attorney General the discretionary authority to exclude Citland from the directory if, in his judgment, Citland failed to "cure" its prior violation of "subsections C and D of § 3.1-336.4."  Subsections C and D require, among other things, annual certification verifying that the manufacturer has established an escrow fund and otherwise complied with all statutory obligations.  Code § 3.1-336.4(C) & (D).

Nothing in subsections C or D of § 3.1-336.4 — or, for that matter, any other statutory provision — required Citland to pay a proposed civil penalty.  Instead, Code § 3.1-336.2(C)(1) makes clear the "court, upon finding a violation" has sole authority to "impose a civil penalty" under the statute.  In this respect, the Attorney General's role is not adjudicative, but representative.  See Code § 3.1-336.2(C) (authorizing the Attorney General to file a civil penalty action "on behalf of the Commonwealth").  The Attorney General brings the suit.  The court alone decides it.

Even so, the Attorney General responds, his power to insist upon a "cure" before listing a manufacturer in the directory includes not only the power to require full present compliance, but also the power to impose a civil penalty for alleged past noncompliance.  We disagree.

In accepted legal parlance, a cure remedies a default — not penalizes it.  Curing a default "commonly means taking care of the triggering event and returning to pre-default conditions" or "to remedy or rectify the default and restore matters to the status quo ante."  Litton v. Wachovia

---

[4] The Attorney General does not argue that the initial "shall" command in Code § 3.1-336.5(A) really means may — thus permitting him to include or exclude manufacturers from the directory at his discretion whether or not either of the exceptions in (A)(1) or (A)(2) applies.  We agree with this implicit concession.  If the initial statutory command were not mandatory, there would be little need to follow it up with express exceptions.

Bank, 330 F.3d 636, 644 (4th Cir. 2003) (citations omitted).  A contractual party, for example, cures a breach of contract by remedying the breach,[5] not by paying punitive damages.  The remedial concept of cure does not typically include any punitive connotation, the chief characteristic of a civil penalty.  See generally Black's Law Dictionary 1198 (8th ed. 2004) (defining penalty as "Punishment imposed on a wrongdoer . . . esp., a sum of money exacted as punishment for either a wrong to the state or a civil wrong"); United States v. Telluride Co., 146 F.3d 1241, 1246 (10th Cir. 1998) (finding the ordinary meaning of "penalty" is "a sanction or punishment imposed for violating a public law which goes beyond compensation for the injury caused by the defendant").

We accept that the conventional use of a term may be misleading when placed in an unconventional statutory context.  The context of the tobacco statutes, however, confirms our interpretation.  If the "cure" discretion of Code § 3.1-336.5(A)(1) extended to proposed penalties, it would undermine Code § 3.1-336.2(C)(1)'s carefully crafted scheme of *judicially* imposed penalties.  It is hardly likely the Attorney General would file suit to collect a penalty payment he has already received.  The judicial process overseeing the imposition of civil

---

[5] See Restatement (Second) Contracts § 237 cmt. b (1981) ("Even if the failure is material, it may still be possible to cure it by subsequent performance without material failure."); 2 E. Allan Farnsworth, Farnsworth on Contracts § 8.17 (2001) (explaining that a breach can be cured "by correcting the deficiency in performance"); 8 Catherine M.A. McCauliff, Corbin on Contracts § 36.7 (2004) ("Cure gives a contractor a second chance to perform according to the contract." (citation omitted)).  So, too, a defaulting party makes a "cure" under the UCC by making good on his promise.  See, e.g., Code §§ 8.2-508(1), 8.2-510(1), 8.2-612(2); see also Code § 59.1-507.3(a) (employing similar "cure" principle in Uniform Computer Information Transactions Act).  Under partnership law, a partnership may "cure" an illegality by suspending the illegal conduct and thus avoid statutory dissolution.  See Code § 50-73.117(4).  A pleader "cures" defects in service of process by doing it right the second time.  Lifestar Response of Md., Inc. v. Vegosen, 267 Va. 720, 725, 594 S.E.2d 589, 591-92 (2004); see also Welding, Inc. v. Bland County Serv. Auth., 261 Va. 218, 228, 541 S.E.2d 909, 915 (2001) (discussing methods to "cure" a defective pleading).

penalties would be sidelined, almost to the point of irrelevancy, if the Attorney General could collect proposed penalties as a tribute for admission into the directory.

The Attorney General's view of his "cure" discretion would also put into question what meaning, if any, would be left of Code § 3.1-336.5(A)(2) in civil penalty cases. It excludes manufacturers from the directory for, among other things, failing to satisfy "all outstanding final judgments." Here again, there would be no final judgments imposing civil penalties if the Attorney General coerced manufacturers into paying proposed penalties — using entry into, or expulsion from, the directory as the instrument of coercion.

III.

In sum, Code § 3.1-336.5(A)(1) does not grant the Attorney General discretion to exclude Citland from the directory because of nonpayment of proposed penalties for alleged violations of the tobacco statutes. The circuit court, therefore, erred as a matter of law in dismissing the VAPA appeal filed by Citland. We remand this matter to the circuit court for further proceedings consistent with this opinion.[6]

Reversed and remanded.

---

[6] See generally Code § 2.2-4029 (authorizing the circuit court to "compel agency action unlawfully and arbitrarily withheld or unreasonably delayed" or to remand the matter back to the agency for further proceedings consistent with law).