COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Chafin and O'Brien
Argued at Williamsburg, Virginia

**PUBLISHED**

CITY OF VIRGINIA BEACH

v.      Record No. 1232-18-1

VIRGINIA MARINE RESOURCES COMMISSION

OPINION BY
JUDGE MARY GRACE O'BRIEN
MARCH 19, 2019

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

Gerald L. Harris, Associate City Attorney (Mark D. Stiles, City
Attorney; Christopher S. Boynton, Deputy City Attorney; Joseph M.
Kurt, Assistant City Attorney, on briefs), for appellant.

Kelci A. Block, Assistant Attorney General (Mark R. Herring,
Attorney General; Stephen A. Cobb, Deputy Attorney General;
Donald D. Anderson, Senior Assistant Attorney General & Section
Chief, on brief), for appellee.


The City of Virginia Beach ("the City") appeals a circuit court order affirming a decision by

the Virginia Marine Resources Commission ("VMRC") rejecting the City's application to receive a

transfer of an oyster-planting ground lease under Code § 28.2-625.  The City contends that the court

misinterpreted the statute because "Virginia law plainly authorizes the City to occupy and hold

oyster-planting ground leases by transfer or assignment."  It also asserts that the court erred in

relying on the principle of *expressio unius est exclusio alterius* to conclude that the General

Assembly intended to make municipalities ineligible to receive these leases by transfer.  For the

following reasons, we reverse the court's decision.

BACKGROUND

In January 2015, the City enacted an ordinance establishing a Neighborhood Dredging Special Service District ("NDSSD") for Hurd's Cove, a branch of the Lynnhaven River. See Municipal Code 35.3-13(a). See also Code § 15.2-2403 (authorizing governing bodies to create service districts for the "dredging of creeks and rivers to maintain existing uses").

The path for the Hurd's Cove NDSSD extends through an oyster-planting ground lease held by the Zipperer family ("Zipperer Lease"). After the NDSSD took effect, Philip Hightower, a waterfront property owner who opposed the dredging project, applied to VMRC for an oyster-planting riparian lease pursuant to Code § 28.2-600 ("Hightower Lease"). The proposed Hightower Lease abutted the Zipperer Lease and would be within the path of the dredging project.

The City objected to the application, arguing that Hightower only sought the lease to prevent the dredging project.[1] VMRC granted the application, and the circuit court affirmed its decision. Upon appeal, this Court also affirmed. City of Virginia Beach v. Va. Marine Res. Comm'n and Philip G. Hightower, No. 1648-17-1 (Va. Ct. App. Aug. 21, 2018).[2]

While litigating the Hightower Lease, the City also pursued non-judicial means to advance the dredging project. It negotiated an agreement to acquire a portion of the Zipperer Lease pursuant to Code § 28.2-625. The transfer would enable the City to dredge slightly outside the Hightower Lease. After the City and Zipperer leaseholders signed the agreement, the City submitted it to VMRC with an "Application for Transfer of Oyster Planting Ground" requesting transfer of two areas within the Zipperer Lease.

---

[1] The Hightower Lease jeopardized the dredging project because VMRC issues dredging permits with a standard condition requiring the consent of oyster-planting ground leaseholders.

[2] On September 20, 2018, the City noted an appeal to the Supreme Court. City of Virginia Beach v. Va. Marine Res. Comm'n and Philip G. Hightower, No. 181231.

VMRC rejected the transfer application. In its refusal letter, VMRC stated:

> Pursuant to [Code § 28.2-625], oyster planting grounds can only be transferred "to a resident of the Commonwealth, or a firm or corporation authorized by Virginia laws to occupy and hold oyster planting ground[]." We do not believe the City of Virginia Beach qualifies for a transfer pursuant to this Code section.

The City appealed to circuit court. The parties agreed that the facts were undisputed and the only issue was statutory interpretation, which the court reviewed *de novo*. The City argued that municipalities are corporations authorized to hold or occupy oyster-planting ground leases under Code § 28.2-604 and therefore are eligible to receive lease transfers under Code § 28.2-625. VMRC responded that because the General Assembly included the term "municipality" in Code § 28.2-604 but omitted it from Code § 28.2-625, the City was not eligible to receive the transfer.

The court affirmed VMRC's denial and held,

> The City's argument . . . runs contrary to the plain language of [Code §] 28.2-625 and the statutory scheme. The fact that the General Assembly expressly excluded municipalities for transfers and expressly included them [in Code § 28.2-604] governing applications, we have to assume that they knew what they were doing[,] so the VMRC's decision is affirmed.

The court entered an order ruling "that the City is not eligible to receive an oyster lease transfer and that [VMRC] acted in accordance with the law." This appeal followed.

ANALYSIS

A. Standard of Review

An appeal from a VMRC decision is governed by the Virginia Administrative Process Act, Code §§ 2.2-4000 to -4031 ("VAPA"). Under Code § 2.2-4027, "the circuit court reviews an agency's action in a manner 'equivalent to an appellate court's role in an appeal from a trial court.'" Commonwealth ex rel. Va. State Water Control Bd. v. Blue Ridge Envtl. Def. League, Inc., 56 Va. App. 469, 479-80 (2010) (quoting J.P. v. Carter, 24 Va. App. 707, 721 (1997)), aff'd, 283 Va. 1 (2012).

> [T]he duty of the court with respect to issues of fact shall be to determine whether there was substantial evidence in the agency record to support the agency decision. The duty of the court with respect to the issues of law shall be to review the agency decision *de novo*.

Code § 2.2-4027. Circuit court judgments in administrative appeals "shall be subject to appeal to or review by higher courts as in other cases." Code § 2.2-4026(A).

On appeal, "the governing standard of review [under VAPA] depends on the nature of the controversy." Citland, Ltd. v. Commonwealth ex rel. Kilgore, 45 Va. App. 268, 274 (2005). When the appeal presents factual issues, this Court "defer[s] to the agency just as we would a jury or a trial court." Id. "Similarly, when the appellant challenges a judgment call on a topic on which 'the agency has been entrusted with wide discretion by the General Assembly,' we will overturn the decision only if it can be fairly characterized as 'arbitrary or capricious' and thus a 'clear abuse of delegated discretion.'" Id. at 275 (quoting Vasaio v. Dep't of Motor Vehicles, 42 Va. App. 190, 196-97 (2004)).

However, an "agency does not possess specialized competence over the interpretation of a statute merely because it addresses topics within the agency's delegable authority." Finnerty v. Thornton Hall, Inc., 42 Va. App. 628, 634 (2004). "Pure statutory construction, a matter within the 'core competency of the judiciary' requires *de novo* review." Citland, 45 Va. App. at 275 (quoting Finnerty, 42 Va. App. at 635). Therefore, because this case presents an issue of statutory interpretation, we conduct a *de novo* review.

### B. Statutory Framework

Generally,

> [a]ll the beds of the bays, rivers, creeks and the shores of the sea within the jurisdiction of the Commonwealth . . . shall remain the property of the Commonwealth and may be used . . . by all the people of the Commonwealth for the purpose of fishing, fowling, hunting, and taking and catching oysters and other shellfish.

- 4 -

Code § 28.2-1200. However, publicly held submerged lands are available for lease by way of assignment from VMRC. Code § 28.2-603. See Working Waterman's Ass'n of Va., Inc. v. Seafood Harvesters, Inc., 227 Va. 101, 104 (1984).

Code § 28.2-603 provides that submerged lands "may be leased by [VMRC] upon the receipt of a proper application." Entities allowed to apply to VMRC for oyster-planting ground leases are identified in Code § 28.2-604:

> Application for assignment of general oyster-planting ground may be made by (i) any resident of the Commonwealth, (ii) any county, *municipality*, or political subdivision of the Commonwealth, or (iii) any firm, or *corporation* chartered under the laws of this Commonwealth for the purpose of oyster culture and the oyster business provided that at least sixty percent of the stock of any such corporation is wholly owned by residents of the Commonwealth.

(Emphasis added). Because the City is a municipality, Code § 28.2-604(ii) expressly allows it to apply for oyster-planting ground leases.

Once granted, these leases are also transferable. Code § 28.2-625 identifies the entities allowed to receive transfers or assignments of oyster-planting ground leases:

> The transfer or assignment may be made only to a resident of the Commonwealth, or a firm or corporation authorized by Virginia laws to occupy and hold oyster-planting ground.

Code § 28.2-625(1). This transfer statute does not specifically include the term "municipalities." The circuit court found that although Code § 28.2-604(ii) expressly allows municipalities to apply for oyster-planting ground leases, the General Assembly deliberately omitted them from the list of entities eligible to receive lease transfers in Code § 28.2-625(1). For that reason, it affirmed VMRC's rejection of the City's application for transfer of the Zipperer Lease.

### C. Statutory Construction

When interpreting a statute, "courts apply the plain meaning . . . unless the terms are ambiguous or applying the plain language would lead to an absurd result." Miller & Rhoads Bldg.,

LLC v. City of Richmond, 292 Va. 537, 541 (2016) (quoting Baker v. Commonwealth, 284 Va. 572, 576 (2012)). "Thus, the paramount principle of statutory interpretation is 'to interpret the statute as written.'" Id. at 542 (quoting City of Lynchburg v. Suttenfield, 177 Va. 212, 221 (1941)).

In determining the plain meaning of a statute, appellate courts have "long recognized that 'statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great, connected, homogenous system, or a single and complete statutory arrangement.'" Id. at 543 (quoting Prillaman v. Commonwealth, 199 Va. 401, 405 (1957)). Further, courts "presume that, in choosing the words of the statute, 'the General Assembly acted with full knowledge of the law in the area in which it dealt.'" Turner v. Commonwealth, 295 Va. 104, 109 (2018) (quoting Phillip Morris USA Inc. v. Chesapeake Bay Found., Inc., 273 Va. 564, 576 (2007)).

The City argues that the plain language of Code § 28.2-625(1) makes it eligible to receive transfers of oyster-planting ground leases. That statute allows transfers to a "firm or corporation authorized by Virginia laws to occupy and hold oyster-planting ground." Code § 28.2-625(1). The City argues that it satisfies this requirement because municipalities are corporations and because municipalities are expressly authorized to apply for and therefore hold oyster-planting ground under Code § 28.2-604(ii). The City asserts that to construe the statutes as authorizing municipalities to *apply* for leases – and therefore "occupy and hold" oyster-planting ground – but not *receive* lease transfers would produce absurd results.

We agree that municipalities fall within the broad category of "firm or corporation" as used in Code § 28.2-625(1). First, the City, like all cities in the Commonwealth, is an "independent incorporated community." Code § 15.2-102. See Virginia Beach, City Charter § 1.01, 1962 Va. Acts ch. 147 ("[T]he City of Virginia Beach . . . shall continue to be a body politic and *corporate*." (emphasis added)).

- 6 -

Further, in other statutes, the General Assembly has expressly excluded municipalities from the term "corporation" when necessary. For example, statutes addressing public service companies and utilities routinely exclude municipal corporations from the definition of "corporation" and "company." See, e.g., Code § 56-1 (excluding "all municipal corporations" from definition of "[c]orporation" for purposes of public service companies); Code § 56-265.1(a) (excluding "municipal corporation" from definition of "[c]ompany" for purposes of utility facilities act); Code § 15.2-2126 (preventing corporations "other than a municipal corporation" from extending a sewage system without a permit).

These statutes demonstrate that the term "corporation" as used in the Code generally includes "municipal corporations." If the General Assembly wishes to make a distinction between municipal corporations and other corporations, it has used express language to do so. However, Code § 28.2-625(1) contains no such distinction.

The City's status as a municipal corporation does not end the analysis; Code § 28.2-625(1) requires that the corporation is "authorized by Virginia laws to occupy and hold oyster-planting ground." The City argues that, under the plain language of the statutes, municipalities fall within the ambit of Code § 28.2-625(1). We agree. Municipalities are eligible to apply for oyster-planting ground leases under Code § 28.2-604(ii). Because the City can apply for oyster-planting ground leases, it is among the corporate entities authorized to "occupy and hold oyster-planting ground" as required by Code § 28.2-625(1).

VMRC argues that the term "corporation" has precisely the same meaning in Code §§ 28.2-604(iii) and -625(1). It argues that because municipalities are listed separately from corporations in Code § 28.2-604, they cannot be implicitly included in Code § 28.2-625(1). However, contextual language in each statute does not support this interpretation. See JSR Mechanical, Inc. v. Aireco Supply, Inc., 291 Va. 377, 384 (2016) ("Because '[a] statute is not to be

construed by singling out a particular phrase,'" appellate courts "must also consider the disputed portion in context.").

In context, the word "corporation" in Code § 28.2-625(1) is broader than in Code § 28.2-604(iii). Code § 28.2-625(1) applies to corporations "authorized by Virginia law to occupy and hold oyster-planting ground." In contrast, Code § 28.2-604(iii), applies to a narrower subset of corporations "chartered under the laws of this Commonwealth for the purpose of oyster culture and the oyster business provided that at least sixty percent of the stock of any such corporation is wholly owned by residents of the Commonwealth." The plain language of Code § 28.2-625(1) regarding entities authorized "to occupy and hold oyster-planting ground" includes not only the specific subset of corporations listed in Code § 28.2-604(iii), but also the municipal corporations referenced in Code § 28.2-604(ii).

### D. Implied Exclusion

The circuit court found that inclusion of the term "municipalities" in Code § 28.2-604, and its omission from Code § 28.2-625(1), reflected the General Assembly's intent to exclude municipalities from those entities eligible to receive lease transfers. The City argues the court erred by applying the statutory-construction principle of *expressio unius est exclusio alterius*: "the inclusion of one thing implies the exclusion of another." See Va. Dep't of Health v. NRV Real Estate, LLC, 278 Va. 181, 188 (2009) ("[T]he mention of specific items in a statute implies that all items omitted were not intended to be included."). We agree.

The language of Code § 28.2-625(1) is an inclusive short-form reference to anyone authorized to apply for an oyster-planting ground lease in Code § 28.2-604. A similar short-form reference appears in Code § 28.2-605. That statute addresses the required contents of an application allowed under Code § 28.2-604. It states, "It shall be the duty of *any resident, firm, or corporation* desiring to obtain a location for planting or propagating oysters to apply to have the location

determined, designated, surveyed, and assigned." Code § 28.2-605 (emphasis added). This statute does not include the term "municipality" but broadly refers to lease applicants as "any resident, firm, or corporation." Id. Under VMRC's implied-exclusion analysis, municipalities would be free from this obligation because they are not specifically mentioned. However, "statutes are not to be considered as isolated fragments of law, but as a whole." Miller & Rhoads Bldg., LLC, 292 Va. at 543 (quoting Prillaman, 199 Va. at 405). Just as a plain reading of Code § 28.2-605 encompasses municipalities, so does a plain reading of Code § 28.2-625(1).

Further, VMRC does not apply the same implied-exclusion logic to other language used in Code § 28.2-604(iii) but omitted from Code § 28.2-625(1). For example, Code § 28.2-604(iii) refers to corporations where "at least sixty percent of the stock . . . is wholly owned by residents of the Commonwealth." This Virginia ownership requirement for stock corporations reflects a legislative purpose to limit non-residents from acquiring rights to oyster grounds. VMRC does not argue that this ownership requirement is omitted by exclusion from Code § 28.2-625(1). Indeed, omitting this requirement would undermine the legislative purpose by allowing non-resident corporations that cannot apply for leases to otherwise obtain them by transfer. We decline to accept VMRC's selective application of the *expressio unius* principle because "we must apply the interpretation that will carry out the legislative intent behind the statute." Kozmina v. Commonwealth, 281 Va. 347, 350 (2011) (quoting Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104 (2007)).

Finally, VMRC argues that the legislative history reflects the General Assembly's intent to exclude municipalities from Code § 28.2-625(1). However, we do not need to consider the legislative history. "[W]hen the language of an enactment is free from ambiguity, resort to legislative history and extrinsic facts is not permitted because we take the words as written to determine their meaning." Brown v. Lukhard, 229 Va. 316, 321 (1985). Although the word

"corporation" is used differently in Code § 28.2-625(1) and Code § 28.2-604, the contextual language in each statute resolves any potential ambiguity. See Commonwealth v. Jackson, 276 Va. 184, 194 (2008) ("[W]hen the legislature uses the same term in separate statutes, that term has the same meaning in each *unless the General Assembly indicates to the contrary*." (emphasis added)). Code § 28.2-625(1) is a short-form reference to all eligible applicants listed in Code § 28.2-604, including the entities listed in both Code § 28.2-604(ii) and (iii). This conclusion is supported by the language in Code § 28.2-605. Therefore, no ambiguity exists that would require us to review and consider the legislative history.

## CONCLUSION

The plain meaning of Code § 28.2-625, when considered in conjunction with Code § 28.2-604, establishes that municipal corporations – like other corporations authorized to apply for, occupy, and hold oyster-planting ground leases – are also entitled to receive these leases by transfer. We therefore reverse the circuit court's decision and remand for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>