PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Humphreys and Kelsey
Argued at Richmond, Virginia

FAMILY REDIRECTION INSTITUTE, INC.

OPINION BY
v.       Record No. 1274-12-2          JUDGE D. ARTHUR KELSEY
APRIL 16, 2013

COMMONWEALTH OF VIRGINIA DEPARTMENT
 OF MEDICAL ASSISTANCE SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Walter W. Stout, III, Judge

Belinda D. Jones (Jonathan M. Joseph; Christian & Barton,
L.L.P., on briefs), for appellant.

Usha Koduru, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General; Rita W. Beale, Deputy Attorney
General; Kim F. Piner, Senior Assistant Attorney General, on
brief), for appellee.

The Virginia Department of Medical Assistance Services (DMAS) ordered Family

Redirection Institute, Inc. (FRI) to reimburse the Commonwealth for payments made to FRI.

Contesting this reimbursement order, FRI appealed to the circuit court under the Virginia

Administrative Process Act (VAPA), Code §§ 2.2-4000 through -4033, claiming DMAS's

request was arbitrary and capricious.  The circuit court rejected FRI's arguments, as do we.

I.

DMAS administers the federal and state funded Medicaid Program.  See Code

§§ 32.1-323 through -331.17.  DMAS entered into an agreement with FRI to provide intensive

in-home care services to Medicaid-eligible individuals in Virginia.  These services include,

among other things, crisis interventions in the homes of at-risk youths with mental, medical, or

behavioral health problems.  See 12 Va. Admin. Code § 30-50-130(B)(5)(a).  Due to the

specialized needs of the patients receiving these services, DMAS regulations mandate that a

professional participating in the program must be either "an LMHP or a QMHP," 12 Va. Admin. Code § 30-60-61(A)(9), defined as a "Licensed Mental Health Professional" or a "Qualified Mental Health Professional." 12 Va. Admin. Code § 30-50-226(A).

The qualification pertinent to this case is the QMHP, which DMAS regulations define as "a clinician in the human services field who is trained and experienced in providing psychiatric or mental health services to individuals who have a psychiatric diagnosis." Id. A QMHP must be a physician, a psychiatrist, a psychologist, a qualified social worker, a registered nurse, or a "[m]ental health worker" who meets particular criteria listed in the regulation. 12 Va. Admin. Code § 30-50-226(A)(1) to (6). Except for certain registered or certified workers, all mental health workers must have varying levels of "clinical experience," 12 Va. Admin. Code § 30-50-226(A)(6)(a) to (f), ranging from one to four years.

According to the DMAS regulation, "clinical experience" is "practical experience in providing direct services to individuals with mental illness or mental retardation or the provision of direct geriatric services or special education services. Experience may include supervised internships, practicums, and field experience." 12 Va. Admin. Code § 30-50-226(A).

In 2000, and again in 2007, DMAS and FRI entered into agreements authorizing FRI to participate in the DMAS program. The agreements stated that DMAS would pay FRI for its services on the conditions that FRI "keep such records as [the Virginia Medical Assistance Program (VMAP)] determines necessary . . . regarding payments claimed for providing services under the State Plan" and "comply with all applicable state and federal laws, as well as administrative policies and procedures of VMAP as from time to time amended." App. at 655-56. DMAS also provided FRI with a Community Mental Health Rehabilitative Services Manual, which stated: "Providers will be required to refund payments made by Medicaid if they are found to have billed Medicaid contrary to law or regulation, failed to maintain any record or

- 2 -

adequate documentation to support their claims, or billed for medically unnecessary services."

DMAS Community Mental Health Rehabilitative Services Manual ch. VI, at 2 (rev. June 6, 2003).

Following a utilization review by a DMAS auditor, DMAS requested reimbursement for services provided by four FRI employees who lacked sufficient periods of clinical experience at the time of the services billed and were thus unqualified mental health workers. As the enabling statute requires, DMAS placed the burden of proof on FRI to demonstrate the qualifications of its workers. See Code § 32.1-325.1(C). After considering the evidence in the administrative record, DMAS concluded in the final agency decision that FRI did not prove by a preponderance of the evidence that its employees were properly qualified as QMHPs.[1]

FRI appealed the final agency decision to the circuit court. The court entered an order affirming DMAS's decision to obtain reimbursement for all four FRI employees. The court's order stated that DMAS's interpretation of 12 Va. Admin. Code § 30-50-226 "cannot require providers to satisfy an unwritten standard." App. at 305. The court apparently believed, however, that DMAS's interpretation did not violate this principle — for the very next sentence of the order upheld DMAS's decision finding all four FRI employees unqualified.[2]

_____

[1] The audit, informal factfinding conference, and formal review by the administrative hearing officer preceded the final agency decision issued by the Acting Director of DMAS. See generally Beverly Health & Rehab. v. Metcalf, 24 Va. App. 584, 588-89, 484 S.E.2d 156, 158-59 (1997) (describing DMAS's administrative appeal process). In this case, the Acting Director of DMAS accepted some of the hearing officer's recommended conclusions and rejected others. Under settled principles, "the recommendation of a hearing officer is just that — a recommendation, and the DMAS director may reexamine all of the hearing officer's conclusions." Id. at 591, 484 S.E.2d at 160. Under VAPA, courts review only the final agency decision. See Code § 2.2-4027; see also Avante at Roanoke v. Finnerty, 56 Va. App. 190, 197, 692 S.E.2d 277, 280 (2010).

[2] Over DMAS's objection, the court later signed a "Written Statement in Lieu of Transcript" drafted primarily by FRI. App. at 318-19. The written statement said the court "agreed" with FRI's assertion that "DMAS' failure to accept 'on the job' clinical experience as

II.

On appeal, FRI argues the circuit court should have found DMAS's decision "arbitrary and capricious" because DMAS imposed unwritten "documentation requirements" upon FRI to prove the clinical experience of its four employees. Appellant's Br. at 2. FRI adds that the circuit court's final order (which includes a statement that DMAS cannot enforce unwritten standards) demonstrates why its holding (which finds DMAS properly requested reimbursement for the four unqualified FRI workers) was plainly wrong. Id. On several levels, we disagree.

A. VAPA & THE LIMITED NATURE OF JUDICIAL REVIEW

Under the VAPA, the circuit court reviews an agency's action in a manner "equivalent to an appellate court's role in an appeal from a trial court." Mattaponi Indian Tribe v. Commonwealth, 43 Va. App. 690, 707, 601 S.E.2d 667, 676 (2004) (citations omitted), aff'd in relevant part sub nom. Alliance to Save the Mattaponi v. Commonwealth, 270 Va. 423, 621 S.E.2d 78 (2005). "In this sense, the General Assembly has provided that a circuit court acts as

---

'clinical experience' toward reaching qualification as a QMHP is inappropriate because it enforces an unwritten standard for which the provider had no notice." Id. at 319. Inexplicably, the written statement goes on to say: "The Court did not rule, but necessarily following the Court's holding that DMAS could not enforce 'unwritten rules' denying 'on the job' experience as satisfying the requisite 'clinical experience' criteria, DMAS cannot demand recoupment for those services provided by clinicians that satisfied the criteria for QMHP(s) during the audit period beginning on the date that the QMHP criteria was [sic] satisfied." Id. Two of the four workers, the statement concluded, "satisfied the criteria of a QMHP during the audit period." Id.

For reasons expressed later in our opinion, see *infra* at 7, we look solely to the court's final order as the best evidence of its ruling. See McMillion v. Dryvit Sys., Inc., 262 Va. 463, 469, 552 S.E.2d 364, 368 (2001) ("[T]rial courts speak only through their written orders and . . . such orders are presumed to reflect accurately what transpired."); Stamper v. Commonwealth, 220 Va. 260, 280-81, 257 S.E.2d 808, 822 (1979) ("[W]e presume that the order, as the final pronouncement on the subject, rather than a transcript that may be flawed by omissions, accurately reflects what transpired."); Anderson v. Commonwealth, 13 Va. App. 506, 508, 413 S.E.2d 75, 77 (1992) (stating that "[t]ranscripts and statements of facts serve the identical purpose on appeal," and thus "[f]airness and common sense dictate that policies regarding transcripts and statements of facts be reasonably analogous.").

an appellate tribunal." Laurels of Bon Air, LLC v. Med. Facilities of Am. LIV Ltd. P'ship, 51 Va. App. 583, 591, 659 S.E.2d 561, 565 (2008) (quoting Gordon v. Allen, 24 Va. App. 272, 277, 482 S.E.2d 66, 68 (1997)).

The circuit court has no authority under VAPA to reweigh the facts in the agency's evidentiary record. VAPA authorizes the court to "reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion." Mattaponi Indian Tribe, 43 Va. App. at 706, 601 S.E.2d at 675 (emphasis in original) (citation and internal quotation marks omitted). "Nor can the court substitute its own judgment for the agency's on matters committed by statute to the agency's discretion." Boone v. Harrison, 52 Va. App. 53, 62, 660 S.E.2d 704, 708 (2008).

Instead, "when the appellant challenges a judgment call on a topic on which 'the agency has been entrusted with wide discretion by the General Assembly,' we will overturn the decision only if it can be fairly characterized as 'arbitrary or capricious' and thus a 'clear abuse of delegated discretion.'" Citland, Ltd. v. Commonwealth ex rel. Kilgore, 45 Va. App. 268, 275, 610 S.E.2d 321, 324 (2005) (citation omitted). "This standard recognizes the larger premise that, before any legal question can be answered, an *a priori* question must first be asked — who has the authority to decide. It is the one question that precedes all others." Boone, 52 Va. App. at 62, 660 S.E.2d at 708.

We generally review legal questions *de novo*. That is certainly the case when we interpret statutes.[3] But we take a very different approach to interpreting administrative

---

[3] See Va. Emp't Comm'n v. Cmty. Alts., 57 Va. App. 700, 708, 705 S.E.2d 530, 534 (2011) ("Pure statutory construction, a matter within the 'core competency of the judiciary,' requires *de novo* review." (citation omitted)); Finnerty v. Thornton Hall, Inc., 42 Va. App. 628, 634, 593 S.E.2d 568, 571 (2004) ("[P]ure statutory interpretation is the prerogative of the judiciary." (citation and internal quotation marks omitted)).

regulations. When authorized by the General Assembly to issue regulations, an agency acts securely within its delegable authority to interpret those regulations if it does so reasonably and in a manner consistent with the legislative directive. We thus afford DMAS "great deference" in its administrative "'interpretation and application of its own regulations.'" Finnerty v. Thornton Hall, Inc., 42 Va. App. 628, 634 n.2, 593 S.E.2d 568, 571 n.2 (2004) (quoting Dep't of Med. Assistance Servs. v. Beverly Healthcare, 41 Va. App. 468, 481, 585 S.E.2d 858, 865 (2003)); cf. Bd. of Supervisors v. State Bldg. Code Tech. Review Bd., 52 Va. App. 460, 466, 663 S.E.2d 571, 574 (2008) (noting limits to such deference).

## B. THE CIRCUIT COURT'S FINAL ORDER

With these principles framing our review, we next turn to the language of the circuit court's final order. FRI reads in it a fatal inconsistency. According to FRI, the order endorses FRI's main argument that DMAS was enforcing "documentation requirements" not clearly stated in its regulations. Despite this purported endorsement, the order rules in DMAS's favor on the merits with respect to all four FRI employees. FRI argues we should affirm the circuit court's reasoning and reverse its holding. We think just the opposite is true. It seems to us the better approach is to affirm the court's holding and ignore its allegedly inconsistent reasoning.

To begin with, we are not at all confident of FRI's reading of the court's statement that DMAS's interpretation of 12 Va. Admin. Code § 30-50-226 "cannot require providers to satisfy an unwritten standard." App. at 305. FRI reads the statement to mean that DMAS improperly held FRI to an unwritten standard. The next sentence of the order, however, upholds DMAS's decision in full. Perhaps the court meant only to voice its agreement with FRI's theory in the abstract, while disagreeing that it applied to this case. Viewed through this contextual lens, the court simply said: "Yes, as a general principle, DMAS cannot apply an unwritten standard to FRI; but the court does not believe DMAS did so in this case."

- 6 -

We acknowledge the conceptual gap between what the court said and what it did seems rather wide, particularly considering the statement of facts adopted by the court. See *supra* n.2. Mitigating that concern, however, is the basic tenet that an appellate court "reviews judgments, not statements in opinions." California v. Rooney, 483 U.S. 307, 311 (1987) (*per curiam*) (citation omitted); see also Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 n.8 (1984). When the issue on appeal involves a matter of law reviewed *de novo*, the "question before an appellate Court is, was the judgment correct, not the ground on which the judgment professes to proceed." McClung v. Silliman, 19 U.S. (6 Wheat.) 598, 603 (1821).

In this case, the question before us is exactly the same as the one before the circuit court: Did DMAS interpret or apply its regulations in a manner that arbitrarily and capriciously required FRI to reimburse DMAS for prior Medicaid payments for the four unqualified employees? We can answer this legal question without attempting to tease out of the circuit court's statements various enigmatic meanings allegedly favorable or disfavorable to its holding.

## C. DMAS REGULATIONS & FINAL AGENCY DECISION

DMAS regulations define a QMHP as "a clinician in the human services field who is *trained* and *experienced* in providing psychiatric or mental health services to individuals who have a psychiatric diagnosis." 12 Va. Admin. Code § 30-50-226(A) (emphasis added). The syntax of this definition leaves no doubt as to its meaning: The requisite training and experience must be gained prior to the employee's services being billed to DMAS. DMAS interprets this regulation to permit on-the-job training so long as it involves true clinical experience as defined in 12 Va. Admin Code § 30-50-226(A).[4]

---

[4] FRI points to the testimony of the DMAS auditor who apparently failed to credit any on-the-job training of the four workers while in FRI's employment, even prior to the time FRI billed the workers as QMHPs. See App. at 518-19. As FRI concedes on appeal, however, the

DMAS applied these definitions to the four disputed FRI employees and found that each lacked the required amount of clinical experience to be qualified as a QMHP at the time the services were rendered. This decision should not stand, FRI contends, because underlying it are unwritten "documentation requirements" nowhere spelled out in the regulations. Appellant's Br. at 9. We disagree.

To us, the record shows nothing more than DMAS looking for contemporaneous written evidence to support FRI's claim that its employees had *bona fide* clinical experience before being billed as QMHPs. It is understandable DMAS would do so. FRI provided DMAS with multiple, inconsistent versions of the employees' resumes and copies of their diplomas and first-aid certifications. To the extent any supervised on-the-job training occurred, none of it was adequately documented. We can hardly fault DMAS for considering the presence or absence of documentary evidence relevant to its decision.

Perhaps not, FRI argues in the alternative, but FRI should have been given prior notice of DMAS's need for documentary proof of the employees' training and qualifications. We question the factual assumption behind this assertion.[5] At the formal hearing, FRI's executive program director acknowledged that DMAS requested "some records from these employees," App. at

hearing officer reviewed each worker's employment record while at FRI for any evidence of *bona fide* clinical experience. See Oral Argument Audio at 10:24 to 10:34. Except for disagreeing with the hearing officer's conclusion with respect to one of the four workers, DMAS's final agency decision adopted the hearing officer's view that on-the-job training, if proven, could satisfy the clinical experience requirement. At oral argument on appeal, DMAS's counsel reaffirmed that "DMAS's position is not that on-the-job training won't count towards clinical experience; it will count so long as it meets the requirements in the regulation." Oral Argument Audio at 19:03 to 19:11; see also id. at 16:45 to 16:55; 17:21 to 17:26. We agree that this position is reflected in DMAS's final agency decision in this case.

[5] At oral argument, FRI conceded it received notice during the informal factfinding conference of the need to present documentary evidence to support its claim that all four employees were qualified as QMHPs. See Oral Argument Audio at 11:26 to 11:42. The record supports this concession. See App. at 3, 36, 53, 364, 424, 456, 792-816, 818-19, 827-37.

423, and suggested FRI actually had *more* documentation available: "We could have — we were willing to drive a truck up, if needed, and bring the whole shebang, but we weren't told to, unfortunately." Id. at 424.

At any rate, it strikes us as common sense that a decisionmaker would want to examine available documents that might affirm or disaffirm a claimant's position. DMAS's alleged failure to make this obvious point clear to FRI did not violate due process principles. See generally Program Suppliers v. Librarian of Cong., 409 F.3d 395, 402 (D.C. Cir. 2005) (noting that "[w]hile due process may require that parties receive notice and an opportunity to introduce relevant evidence," there is no case "holding that due process requires agencies to give advance notice of what evidence they intend to credit"); accord ICO Global Commc'ns (Holdings) Ltd. v. FCC, 428 F.3d 264, 268 (D.C. Cir. 2005) ("[T]here is no due process violation if a regulated party acting in good faith is able to identify, with ascertainable certainty, the standards with which the agency expects parties to conform." (citation and internal quotation marks omitted)).

We also find no basis for FRI's complaint that DMAS's alleged "documentation requirements," Appellant's Br. at 9, produced insupportable factual conclusions. DMAS found that one employee held a Bachelor's degree in Criminal Justice and had prior work experience at QVC, Pizza Hut, and the YMCA before joining FRI. The employee claimed to have been a youth counselor while in high school. DMAS reviewed this work background and concluded: "There is no job description or employment history that would establish [three] years of clinical experience. There is no record of clinical supervision." App. at 162. Moreover, DMAS found FRI's "file documentation was self-serving and non-verifiable," and thus FRI "failed to carry the burden of proving that [this employee] satisfied the qualifications of a QMHP." Id.

The other three employees fared no better. For one, FRI relied upon his prior work as a volunteer at a church and community center, but no evidence (written or unwritten) suggested he

- 9 -

provided any direct services to individuals with mental retardation or illness. For another employee, FRI cited his prior experience as a high school English teacher and a dorm resident assistant in college, but no evidence proved either position involved counseling students with mental health diagnoses. FRI's final employee had a Bachelor's degree in Sociology, a term of service with the United States Army Reserves, and leadership experience in a cadet organization. But, as with the other employees, no evidence proved her background met the definition of "clinical experience" sufficient to be deemed a QMHP.

FRI had the burden of proving the qualifications of each employee. Given the paucity of evidence presented by FRI, we cannot hold the record as a whole compels a "reasonable mind" to "*necessarily* come to a different conclusion.'" Boone, 52 Va. App. at 62, 660 S.E.2d at 708 (emphasis in original) (citation omitted). As we have said before, "DMAS possesses the requisite experience and competence necessary to determine the reimbursement due qualified providers for their reasonable costs incurred while delivering health care services." Fralin v. Kozlowski, 18 Va. App. 697, 701, 447 S.E.2d 238, 241 (1994). None of DMAS's findings in this case shake our confidence in this principle of factfinding deference.

## III.

In short, DMAS did not enforce unwritten documentation requirements by simply noting the presence or absence of written evidence offered in support of FRI's claim that all four employees were qualified as QMHPs. Nor did DMAS act irrationally by determining that FRI did not establish their qualifications by a preponderance of the evidence. We thus affirm the circuit court's judgment upholding DMAS's final agency decision.

Affirmed.