COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Felton, Judge Kelsey and Senior Judge Bumgardner
Argued at Richmond, Virginia


PROFESSIONAL THERAPIES, INC.
                                                     MEMORANDUM OPINION[*] BY
v.        Record No. 0801-13-3               CHIEF JUDGE WALTER S. FELTON, JR.
                                                        DECEMBER 3, 2013
COMMONWEALTH OF VIRGINIA,
  DEPARTMENT OF MEDICAL
  ASSISTANCE SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
William D. Broadhurst, Judge

Elizabeth S. Skilling (Harman, Claytor, Corrigan & Wellman, on
briefs), for appellant.

Jennifer L. Gobble, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General; Rita W. Beale, Deputy Attorney
General; Kim F. Piner, Senior Assistant Attorney General, on brief),
for appellee.


Professional Therapies, Inc. (hereinafter "PTI") appeals from a judgment of the Circuit

Court of the City of Roanoke (hereinafter "circuit court") affirming the decision of the Director

of the Department of Medical Assistance Services (hereinafter "DMAS") that DMAS overpaid

$32,099 to PTI for Medicaid claims incurred August 1, 2008 through June 30, 2009.  On appeal,

PTI asserts that the circuit court erred in affirming the Director of DMAS's decision arguing (1)

that the Director of DMAS applied the rationale contained in the 2003 regulation instead of

applying the 2009 emergency regulation governing payments for Medicaid claims; (2) that

DMAS's application of the regulation was arbitrary and capricious; and (3) that the circuit court

ignored the "substantial evidence" standard of review because the Director of DMAS's decision

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

was not supported by the evidence. For the following reasons, we affirm the judgment of the circuit court.

## I. BACKGROUND

PTI is a certified rehabilitation agency providing physical, occupational, and speech therapy services for Medicaid patients. DMAS pays PTI for services PTI rendered to Medicaid patients. This appeal arises out of a dispute over the compensation amount paid by DMAS to PTI for services rendered to Medicaid patients between August 1, 2008 and June 30, 2009, PTI's partial fiscal year. DMAS asserted that it overpaid PTI $32,099 in Medicaid claims for that period.

PTI disputed DMAS's claim and requested an evidentiary hearing. On January 10, 2011, following the evidentiary hearing, the hearing officer issued his written recommendations to the Director of DMAS. The hearing officer recommended DMAS's request for reimbursement of $32,099 from PTI be denied. The hearing officer also recommended that DMAS pay PTI an additional $9,825.89 for unpaid claims incurred between August 1, 2008 and June 30, 2009.

On March 11, 2011, the Director of DMAS rejected the hearing officer's recommendations and ordered PTI to refund $32,099 to DMAS. The Director of DMAS concluded as follows:

> In his Recommended Decision, the Hearing Officer agreed with [PTI's] interpretation of 12 VAC 30-80-200,[1] to mean that the interim fiscal period should be paid on a prospective rate based on a percentage of charges. The only authority [PTI] cited for their addition of the words "percentage of charges" to the regulation seems to come from Schedule E, Part IV (Form 1203)[2]. . . . Part IV of Schedule E is only used by providers for interim periods to project payment, but not for the final settlements. The Provider has clearly misconstrued the meaning of Part IV Schedule E in an attempt to disregard Part I-III which is clearly titled "Computation

---

[1] 12 VAC 30-80-200 is the regulation that governs prospective reimbursement for rehabilitation agencies.

[2] Schedule E is the "Computation of Prospective Medicaid Reimbursement Rates." Part IV of Schedule E is the "Computation of Percent of Charges To Be Paid."

of Prospective Medicaid Reimbursement Rates For Period Beginning 08/01/2008." Neither Schedule E, nor 12 VAC 30-80-200 support the addition of the words "percentage of charges." Neither the Hearing Officer, nor the Provider offered a viable explanation to contradict the November 10th letter, [nor the testimony of the witnesses], nor to explain the absence of the words "percentage of charges." In fact, there is no evidence in the record to support their contradictory interpretation. Therefore, the Hearing Officer's findings must be rejected as a matter of law and because they are not supported by the record.

(Footnotes added).

The Director of DMAS further held that

After a review of the administrative record, the parties' exhibits, the testimony offered by the parties and the findings of the Hearing Officer, it is clear that no evidence or legal argument was submitted indicating that DMAS erred. The adjustment by the Department, while not agreed to by [PTI], was made in accordance with Virginia Medicaid Law, regulation and policy.

PTI appealed the decision of the Director of DMAS to the circuit court. On December 21, 2012, the circuit court issued a letter opinion finding "that the [Director of DMAS's] ultimate interpretation of the regulations as they apply to the settlement of PTI's 08-09 fiscal year is not unreasonable and is sufficiently (if not perfectly) supported by the record below. Having so found, the [c]ourt is constrained to rule in favor of DMAS" and ordered that PTI reimburse DMAS $32,099.[3]

PTI then appealed that judgment to this Court.

_____

[3] In its December 21, 2012 opinion, the circuit court also withdrew a previous opinion entered on March 28, 2012. The March 28, 2012 opinion held

that DMAS applied the appropriate methodology in determining the prevailing rates to be applied in settlement of PTI's FY08-09. However, the [c]ourt finds that DMAS acted arbitrarily and capriciously in imposing a cutoff date to otherwise qualifying charges for services rendered in FY08-09. The [c]ourt finds that PTI has substantially prevailed on this point and is entitled to attorney's fees as they may relate to this issue. After consideration of the attorney's fee issue, the matter should be remanded with

II.  ANALYSIS

A.  Standard of Review

"Under the [Virginia Administrative Process Act (hereinafter "VAPA")], the circuit court reviews an agency's action in a manner 'equivalent to an appellate court's role in an appeal from a trial court.'"  Family Redirection Inst., Inc. v. Dep't of Med. Assistance Servs., 61 Va. App. 765, 771, 739 S.E.2d 916, 919 (2013) (quoting Mattaponi Indian Tribe v. Commonwealth, 43 Va. App. 690, 707, 601 S.E.2d 667, 676 (2004) (citations omitted), aff'd in relevant part sub nom. Alliance to Save the Mattaponi v. Commonwealth, 270 Va. 423, 621 S.E.2d 78 (2005)). "The circuit court has no authority under VAPA to reweigh the facts in the agency's evidentiary record." Id. at 771, 739 S.E.2d at 920.  "Instead, 'when the appellant challenges a judgment call on a topic on which the agency has been entrusted with wide discretion by the General Assembly, we will overturn the decision only if it can be fairly characterized as arbitrary or capricious and thus a clear abuse of delegated discretion.'" Id. at 771-72, 739 S.E.2d at 920 (quoting Citland, Ltd. v. Commonwealth ex rel. Kilgore, 45 Va. App. 268, 275, 610 S.E.2d 321, 324 (2005) (citation and quotation marks omitted)).

On appeal, we "afford DMAS 'great deference' in its administrative 'interpretation and application of its own regulations.'" Id. at 772, 739 S.E.2d at 920 (quoting Finnerty v. Thornton Hall, Inc., 42 Va. App. 628, 634 n.2, 593 S.E.2d 568, 571 n.2 (2004) (citation omitted)).

B.  The Regulation: 12 VAC 30-80-200

1.  2003 version

Throughout the history of this case, DMAS asserted that the current version of 12 VAC 30-80-200 refers back to the 2003 Regulation regarding the rate methodology used to settle

directions to DMAS to settle the FY08-09 accounts as interpreted herein.

- 4 -

reimbursement to outpatient rehabilitation service providers, such as PTI. The 2003 version of 12 VAC 30-80-200 provided, in pertinent part:

> A. Effective for dates of service on and after July 1, 2003, rehabilitation agencies, excluding those operated by Community Services Boards, shall be reimbursed a prospective rate equal to the lesser of the agency's cost per visit for each type of rehabilitation service (physical therapy, occupational therapy, and speech therapy) or a statewide ceiling established for each type of service.
>
> \*      \*      \*      \*      \*      \*      \*
>
> B. In each provider fiscal year, each provider's prospective rate shall be determined based on the cost report from the previous year and the ceiling, calculated by DMAS, that is applicable to the state fiscal year in which the provider fiscal year begins.
>
> C. For providers with fiscal years that do not begin on July 1, 2003, services for the fiscal year in progress on that date shall be apportioned between the time period before and the time period after that date based on the number of calendar months before and after that date. Costs apportioned before that date shall be settled based on allowable costs, and those after shall be settled based on the prospective methodology.

12 VAC 30-80-200 (2003).

Pursuant to the 2003 Regulation, DMAS reimbursed outpatient rehabilitation service providers, such as PTI, using a process involving cost reports. The cost report was prepared by the provider and established the costs for that fiscal year. However, the cost report also established prospective rates for the next fiscal year.

## 2. 2009 Emergency Regulation

The emergency regulation that revised the 2003 version of 12 VAC 30-80-200 became effective July 1, 2009:

> A. Effective for dates of service on and after July 1, 2009, rehabilitation agencies, excluding those operated by community services boards and state agencies, shall be reimbursed a prospective rate equal to the lesser of agency's fee schedule amount or billed charges per procedure. The agency shall develop a statewide fee schedule based on [Current Procedural

Terminology (CPT)] codes to reimburse providers what the agency estimates they would have been paid in FY 2010 minus $371,800.

B. For providers with fiscal years that do not begin on July 1, 2009, services on or before June 30, 2009, for the fiscal year in progress on that date shall be settled based on the previous prospective rate methodology and the ceilings in effect for that fiscal year as of June 30, 2009.

12 VAC 30-80-200 (2009).

## C. Analysis

On appeal, PTI asserts that the circuit court erred in affirming the Director of DMAS's decision that PTI was overpaid for Medicaid patient claims by $32,099 because (1) the Director of DMAS applied the prior regulation instead of the 2009 emergency regulation; (2) the Director of DMAS's application of the regulation was arbitrary and capricious; and (3) the circuit court ignored the substantial evidence standard of review because the Director of DMAS's decision was not supported by the evidence.

DMAS asserts that the Director of DMAS applied the plain meaning of "settled based on the previous prospective rate methodology" to determine the amount it overpaid PTI. 12 VAC 30-80-200 (2009). On brief, DMAS argues that "settled based on the previous prospective rate methodology" means "that DMAS must follow the previous 2003 Regulation in settling reimbursement for the provider fiscal year in progress up through the date the new 2009 Emergency Regulation became effective." (Appellee's Br. at 13).

The circuit court found that there was "ample basis in the record and in ordinary rules of construction to support the interpretation of 'previous prospective rate methodology' urged by DMAS. It opined that "[t]he plain language of the regulation and common sense both point to the same conclusion: the agency meant to keep the pre-July system in place with respect to pre-July services."

On appeal, PTI bears the burden of proving that there was not substantial evidence in the record to support the agency determination. Code § 2.2-4027. "Under the 'substantial evidence' standard, the reviewing court may reject an agency's factual findings only when, on consideration of the entire record, a reasonable mind would necessarily reach a different conclusion." Alliance to Save the Mattaponi, 270 Va. at 441, 621 S.E.2d at 88.

Applying these principles, this Court concludes that the circuit court did not err in affirming the agency decision that it overpaid PTI by $32,099. Substantial evidence in the record supports the Director of DMAS's determination. The language of the 2009 emergency regulation is clear and was correctly applied in this case by the Director of DMAS. As explained by the circuit court,

> "Where the language of a statute is clear and unambiguous, rules of statutory construction are not required." Ambrogi v. Koontz, 224 Va. 381, 386, 297 S.E.2d 660, 662 (1982). Here, the language is clear. The words "previous prospective rate methodology" in the 2009 regulation must rationally refer to the same "prospective rate" described in the 2003 regulation, which was calculated for each therapy based on the prior year's cost report. The 2009 regulation's use of the word "previous" in conjunction with "prospective rate methodology" obviously refers to the same per-discipline "prospective rate" methodology described in the 2003 regulation. To accept PTI's contention that the words "previous prospective rate methodology" referred to the "percentage of charges" calculation would require the [c]ourt to hold that the 2009 regulation required a methodology that had never been "previously" used in settlement. That reading of the regulation is not plausible.

The Director of DMAS's interpretation and application of the regulation at issue was not arbitrary or capricious. Further, there is substantial evidence in the record to support the Director of DMAS's decision that PTI was overpaid by $32,099 for services provided to Medicaid patients between August 1, 2008 through June 30, 2009. Accordingly, the circuit court did not err in affirming the decision of the Director of DMAS.

## III. CONCLUSION

For the foregoing reasons, we affirm the decision of the circuit court finding that DMAS overpaid PTI in the amount of $32,099.

Affirmed.
