COURT OF APPEALS OF VIRGINIA

Present:  Judges O'Brien, Malveaux and Senior Judge Clements
Argued at Richmond, Virginia

NEW AGE CARE, LLC

                                                OPINION BY
v.        Record No. 1070-19-2           JUDGE MARY GRACE O'BRIEN
                                                JANUARY 7, 2020
CAROLINE JURAN, EXECUTIVE DIRECTOR,
 VIRGINIA BOARD OF PHARMACY AND
 DHARMA PHARMACEUTICALS, LLC

FROM THE CIRCUIT COURT OF HENRICO COUNTY
L. A. Harris, Jr., Judge

         Gregory J. DuBoff (Stanley A. Roberts; McGuire Woods LLP, on
         briefs), for appellant.

         James E. Rutkowski, Assistant Attorney General (Mark R. Herring,
         Attorney General; Cynthia V. Bailey, Deputy Attorney General;
         Allyson K. Tysinger, Senior Assistant Attorney General, on brief),
         for appellee Caroline Juran, Executive Director, Virginia Board of
         Pharmacy.

         J. Scott Sexton (Scott A. Stephenson; Gentry Locke, on brief), for
         appellee Dharma Pharmaceuticals, LLC.

This case involves an appeal pursuant to the Virginia Administrative Process Act ("the

VAPA"), Code §§ 2.2-4000 to -4031.  New Age Care, LLC ("New Age") and Dharma

Pharmaceuticals, LLC ("Dharma") applied to the Virginia Board of Pharmacy ("the Board") for a

pharmaceutical processor permit to operate a facility for producing and dispensing cannabidiol and

THC-A oils.[1]  Code § 54.1-3442.6(B) limits the Board to issuing one permit for each of the five

Health Services Areas ("HSAs") in Virginia.  The parties applied for the single permit available in

---

        [1] Cannabidiol and tetrahydrocannabinol acid (THC-A) are non-intoxicating Cannabis plant
extracts, and the oils are statutorily defined according to their concentrations.  See Code
§ 54.1-3408.3.

HSA III located in southwest Virginia. The Board denied New Age's application and granted conditional approval for the permit to Dharma.

New Age appealed to Henrico County Circuit Court. Dharma moved to dismiss the appeal, and the circuit court granted Dharma's motion. New Age appeals the dismissal and argues the circuit court erred by (1) "considering Dharma's unilateral motion to dismiss;" (2) "granting Dharma's motion to dismiss on invalid grounds;" and (3) "prematurely ruling on the merits of New Age's appeal." For the following reasons, we affirm the circuit court's decision.

BACKGROUND

"Where, as here, 'no evidence [has been] taken with regard to [a] motion to dismiss[,] [appellate courts] treat the factual allegations in the petition as we do on review of a demurrer.'" Bragg v. Bd. of Supervisors, 295 Va. 416, 423 (2018) (quoting Va. Marine Res. Comm'n v. Clark, 281 Va. 679, 686 (2011), overruled in part on other grounds by Woolford v. Va. Dep't of Taxation, 294 Va. 377, 390 n.4 (2017)). "We accept 'the truth of all material facts that are . . . expressly alleged, impliedly alleged, and those that may be fairly and justly inferred from the facts alleged.'" Id. (quoting Harris v. Kreutzer, 271 Va. 188, 195-96 (2006)). This "inquiry encompasses 'not only the substantive allegations of the pleading attacked but also any accompanying exhibit mentioned in the pleading.'" Id. (quoting Flippo v. F & L Land Co., 241 Va. 15, 17 (1991)). See Rule 1:4(i).

Additionally, "[a] court in ruling upon a demurrer [or motion to dismiss] may consider documents not mentioned in the challenged pleading when the parties so stipulate." Flippo, 241 Va. at 17. See Elder v. Holland, 208 Va. 15, 18 (1967) (considering on demurrer the transcript of a prior hearing where parties so stipulate). This Court then "review[s] the circuit court's decision to dismiss the petition, and any corresponding issues of statutory interpretation, *de novo*." Bragg, 295 Va. at 423. See also Graves v. Commonwealth, 294 Va. 196, 199 (2017); Harris, 271 Va. at 195-96. Here, employing these principles, we summarize New Age's petition for appeal to the

circuit court, its attached exhibit, and a stipulated subset of exhibits the parties submitted for consideration along with Dharma's motion to dismiss.

In 2018, the General Assembly amended 2016 legislation authorizing the Board to issue pharmaceutical processor permits to operate cannabidiol/THC-A oil production and dispensary facilities in each of the five HSAs in Virginia. See 2018 Va. Acts ch. 567. The amended statute only allowed one permit for each HSA. Code § 54.1-3442.6(B). The final legislation also authorized the Board to adopt regulations establishing health, safety, and security requirements for the pharmaceutical processors. Code § 54.1-3442.6(C).

Pursuant to this statutory authority, the Board enacted regulations establishing a three-stage application process: "submission of initial application, awarding of conditional approval, and granting of a pharmaceutical processor permit." 18 VAC 110-60-110(A).[2] The regulations identified the information required from each applicant, including the location where the pharmaceutical processor would be operated; detailed information regarding the applicant's financial position; the applicant's plans for security to prevent diversion, theft, or loss of the Cannabis plants and the cannabidiol or THC-A oils; previous or current involvement in the medical cannabidiol oil or THC-A oil industry; business and marketing plans; detailed blueprints; any compassionate need program the applicant intended to offer; and the applicant's expertise in agriculture and other production techniques. 18 VAC 110-60-110(B)(b)-(d), (g), (i), (k)-(m).

The regulations also provided criteria for the Board to consider in evaluating the applications, including compliance with the application requirements. 18 VAC 110-60-120(A), (B). The regulations stated that "[t]he decision of the [B]oard not to grant conditional approval to an applicant shall be final." 18 VAC 110-60-120(C).

---

[2] The regulations relevant to this appeal were effective from August 7, 2017, through February 6, 2019, but they have since been amended.

On April 16, 2018, the Board issued a request for applications ("RFA") for pharmaceutical processor permits in the five HSAs.[3] The RFA, which was not a regulation, stated that "[t]he review and scoring of the applications will be performed by an ad hoc committee appointed by the Board." The RFA stated that the ad hoc committee would score the applications and make a recommendation to the Board: "After completing the review and scoring, the ad hoc committee will rank each application according to its score. The committee will recommend to the Board the issuance of conditional approval to an [a]pplicant in each [HSA] with the highest ranked score."

The RFA specified that the ad hoc committee would score applications in the following areas: the applicant's financial position; location within the HSA; security plans; authorization to conduct business; industry involvement and disciplinary action; agriculture, production, and dispensing expertise; marketing plans; facility exterior and blueprints; product and site safety; expected hours of operation; and an additional category consisting of plans for compassionate needs, research, and delivery services to mitigate risks of diversion, theft, or loss.

The RFA also specifically stated that although the ad hoc committee would make a recommendation to the Board based on its scoring of the applicants, the Board, not the ad hoc committee, would make the final decision: "The Board will grant conditional approval to the [a]pplicants which, in its opinion, have made the best application."

The ad hoc committee, composed of two Board members and three citizen members, met in closed session on September 4, 2018, to evaluate the applications for HSA III, including those submitted by New Age and Dharma. The committee scored New Age's application at 957.5 and Dharma's application at 861.75.

On September 25, 2018, the Board met to determine which, if any, applicants should be awarded conditional approval for a permit. It also received public comments. The Bristol city

_____

[3] New Age attached the RFA as an exhibit to its petition for appeal to the circuit court.

- 4 -

manager and an Abingdon pharmacist both spoke in favor of Dharma's application. No one spoke in support of New Age's application. Twice, the Board voted unanimously to go into closed session pursuant to Code §§ 2.2-3711(A)(5) and 54.1-108(2).[4] First, the Board convened a closed session to consult with legal counsel regarding FOIA and the consideration of applications; second, the Board convened a closed session to consider and evaluate the applications. No one objected. The Board also moved that two of the three citizen members of the ad hoc committee attend the closed sessions; the third citizen member was not present.

The Board reconvened in open session to record the votes. In a motion addressing the HSA III permit, seven Board members voted after one member recused himself, for reasons unrelated to this case, and two others abstained. These seven members, representing a quorum of the ten-person Board pursuant to Code § 54.1-3305, unanimously approved Dharma's application.

The Board issued formal orders announcing its decision and reasoning on December 21, 2018. In its order granting conditional approval to Dharma, the Board noted the score given by the ad hoc committee and made the following findings:

- Dharma's proposed location is "readily accessible to a large population of potential patients in [HSA III];"

- Dharma demonstrated a "strong level of collective expertise in agriculture, production[,] and dispensing techniques;"

- Dharma demonstrated "a strong financial position for initial operations and long-term stability and sustainability;" [and]

- Dharma demonstrated a "strong compassionate need plan."

_____

[4] Code § 2.2-3711(A)(5), part of Virginia's Freedom of Information Act ("FOIA"), Code §§ 2.2-3700 through -3715, allows public bodies to hold closed meetings for purposes of discussing "a prospective business or industry . . . where no previous announcement has been made of the business' or industry's interest in locating . . . its facilities in the community." Code § 54.1-108(2) authorizes regulatory boards to exempt from public disclosure "applications for . . . permitting and the scoring."

- 5 -

The Board concluded that "[b]ased on its review and competitive evaluation of the applications in [HSA III] in accordance with 18 VAC 110-60-120, including the findings set forth above regarding the application . . . and its consideration of the ad hoc committee's scoring recommendations," Dharma "should be granted conditional approval in [HSA III]."

The Board denied New Age's application. Although the Board noted the ad hoc committee's score, it made additional findings:

- New Age's "proposed training opportunities for employees to protect against diversion, theft, or loss, as required by 18 VAC 110-60-180, lacked sufficient detail;"

- New Age's "proposed security plan lacked sufficient details to determine compliance with 18 VAC 110-60-240 through 18 VAC 110-60-270;" [and]

- New Age's "proposed marketing plan lacked sufficient information on effectively educating patients on how to safely dispose of unwanted oils."

The order stated that because the Board granted conditional approval to Dharma and could only approve one applicant in HSA III, New Age's application "must be denied."

New Age appealed the Board's decision to the circuit court pursuant to the VAPA. New Age served Dharma with notice of the appeal and the petition and identified Dharma as a "necessary party" to the proceeding. In its assignments of error, New Age contended that (i) the Board "failed to comply with regulatory authority;" (ii) denial of New Age's application was "arbitrary and capricious;" (iii) the Board "failed to afford New Age the constitutional right of due process;"[5] and (iv) the Board's "closed session violated [FOIA]."

On March 8, 2019, Dharma filed a motion to dismiss with fifteen exhibits attached, including the agenda and minutes from an ad hoc committee meeting, an agenda and minutes from the Board's September 25, 2018 meeting, and the orders issued to New Age and Dharma concerning their applications for conditional permits. In its motion to dismiss, Dharma argued that

---

[5] New Age abandoned this constitutional due process claim on appeal to this Court.

the appeal failed to designate any error of law as required by Code § 2.2-4027 of the VAPA. On May 14, 2019, the Board filed a motion to join Dharma's motion to dismiss.

On May 31, 2019, New Age filed a brief opposing Dharma's motion to dismiss and attached three exhibits duplicative of Dharma's: the minutes from the Board's September 25, 2018 meeting, and the Board's orders issued to New Age and Dharma. Although New Age noted that the Board filed its motion to join "months after the deadline for filing a responsive pleading under Rule 3:8," New Age did not move to strike the document. The circuit court did not expressly rule on the Board's motion to join, but at the June 7, 2019 hearing on Dharma's motion to dismiss, the Board reiterated that it agreed with Dharma's arguments. New Age did not object. The circuit court subsequently issued a letter opinion granting the motion to dismiss, finding that Dharma was a "necessary party" with "authority to file" the motion.

Regarding New Age's first assignment of error, whether the Board had complied with regulatory authority, the circuit court concluded that "the General Assembly ha[d] authorized the 'Board' to make the ultimate decision in this case on a competitive basis. The recommendations of a subcommittee [were] an element in the ultimate decision, but not the final or determining factor." The circuit court found that the Board "considered the scoring by this committee but in conclusion reached a decision different from scoring alone based on additional factors."

The circuit court also rejected the second assignment of error that denial of New Age's application was arbitrary and capricious. It found that the Board's orders "cited reasons for its choice such as compliance with all regulations, location, expertise, financial ability[,] and a plan for the needy." Similarly, the Board "found deficiencies in [New Age's] security and disposal education." The circuit court concluded that the Board's decision "based on its [o]rders was not arbitrary or capricious but based on legitimate considerations that found Dharma to be the overall

best choice." Finally, the circuit court found that "the overall procedures used by the Board were proper[,] including closed sessions[,] especially when no objection was made at the time."

The circuit court concluded that "the errors assigned by [New Age] to the action of the Board are not sufficient to further the appeal." The final dismissal order incorporating the letter opinion was entered on July 2, 2019. This appeal followed.

ANALYSIS

New Age, as the party appealing the Board's decision, had the burden to "designate and demonstrate an error of law subject to review by the [circuit] court." See Code § 2.2-4027. "[T]he circuit court's role in an appeal from an agency decision is equivalent to an appellate court's role in an appeal from a trial court." Comm'r, Va. Dep't of Soc. Servs. v. Fulton, 55 Va. App. 69, 80 (2009) (quoting Sch. Bd. v. Nicely, 12 Va. App. 1041, 1062 (1991)). In both the circuit court and the Court of Appeals, appellate review of agency action is limited to issues of law, including

> (i) accordance with constitutional right, power, privilege, or immunity, (ii) compliance with statutory authority, jurisdiction limitations, or right as provided in the basic laws as to subject matter, the stated objectives for which regulations may be made, and the factual showing respecting violations or entitlement in connection with case decisions, (iii) observance of required procedure where any failure therein is not mere harmless error, and (iv) the substantiality of the evidentiary support for findings of fact.

Code § 2.2-4027. See Va. Bd. of Med. v. Hagmann, 67 Va. App. 488, 499 (2017).

"Under the VAPA, the governing standard of review depends on the nature of the controversy." Citland, Ltd. v. Commonwealth ex rel. Kilgore, 45 Va. App. 268, 274 (2005). When an appeal presents issues of fact, this Court "defer[s] to the agency just as we would a jury or a trial court." Id. "Similarly, when the appellant challenges a judgment call on a topic on which 'the agency has been entrusted with wide discretion by the General Assembly,' we will overturn the decision only if it can be fairly characterized as 'arbitrary or capricious' and thus a 'clear abuse of

- 8 -

delegated discretion.'" Id. at 275 (quoting Vasaio v. Dep't of Motor Vehicles, 42 Va. App. 190, 196-97 (2004)).

However, "[a]n agency does not possess specialized competence over the interpretation of a statute merely because it addresses topics within the agency's delegable authority." Finnerty v. Thornton Hall, Inc., 42 Va. App. 628, 634 (2004). "Pure statutory construction, a matter within the 'core competency of the judiciary,' requires *de novo* review." Citland, 45 Va. App. at 275 (quoting Finnerty, 42 Va. App. at 635).

New Age does not challenge whether substantial evidence supports the decision below. See Code § 2.2-4027(iv). Instead, it argues that the circuit court misconstrued both the rules governing administrative appeals and the regulations pertaining to pharmaceutical processor permits. This Court reviews the circuit court's construction of the rules and regulations *de novo*. Muse Constr. Group, Inc. v. Com. Bd. for Contractors, 61 Va. App. 125, 130 (2012) (*en banc*). Additionally, this Court reviews a circuit court's decision to grant a motion to dismiss *de novo*. Philip Morris USA Inc. v. Chesapeake Bay Found., Inc., 273 Va. 564, 572 (2007). Corresponding issues of law such as statutory interpretation also are reviewed *de novo*. Bragg, 295 Va. at 423.

### 1. Dharma's "unilateral" motion to dismiss

New Age argues that Rule 2A:5 barred the circuit court from considering Dharma's unilateral motion to dismiss. New Age contends that under the Rule, if an agency does not file its own motion to dismiss, the circuit court is required to schedule briefing and argument. Dharma responds that the Rule does not preclude a circuit court from ruling on a non-agency's motion.

Part Two A of the Rules specifically addresses appeals pursuant to the VAPA. See Rule 2A:1 – 2A:6. Appeals also are "governed by the [R]ules contained in Part Three, where not in conflict with the Code of Virginia or [Part Two A]." Rule 2A:5. Part Three applies to all civil

actions, and Rule 3:8 provides that responsive pleadings, including "[a] demurrer, plea, [and] motion to dismiss" must be filed "within [twenty-one] days after service." Rule 3:8(a).

Rule 2A:1 contemplates that an administrative appeal will include non-agency parties, in addition to the agency itself. Rule 2A:1(c) defines "party" as follows:

> The term "party" means any person affected by and claiming the unlawfulness of a regulation, or a party aggrieved who asserts a case decision is unlawful or *any other affected person* or aggrieved person who appeared in person or by counsel at a hearing . . . with respect to the regulation or case decision *as well as the agency itself. Whenever a case decision disposes of an application for a license, permit or other benefit, the applicant, licensee or permittee shall be a necessary party* to any proceeding under this part.

(Emphasis added). In its petition for appeal to circuit court, New Age expressly identified Dharma as a "necessary party" pursuant to Rule 2A:1(c). The circuit court's ruling granting the motion to dismiss also noted that Dharma was a "necessary party" to the appeal. However, New Age now argues that "[t]he concept of Dharma as a 'necessary party' . . . has no bearing on [the] issue" of whether the circuit court had authority to consider Dharma's motion to dismiss. Instead, New Age contends that Rule 2A:5 limits a circuit court's authority to rule only on dispositive motions filed by an agency.

Rule 2A:5(3) and (4) provides as follows:

> Once any motions, demurrers or other pleas *filed by the agency* have been overruled, or *if none have been filed* within the time provided by Rule 3:8 for the filing of a response to the process served under Rule 2A:4, *the appeal shall be deemed submitted* and no answer or further pleadings shall be required except as provided herein or by order of the court.
>
> When the case is submitted and the record has been filed as provided in Rule 2A:3, the court shall establish by order a schedule for briefing and argument of the issues raised in the petition for appeal.

(Emphasis added). New Age contends the phrase "filed by the agency" in Rule 2A:5(3) instructs that, although both agency and non-agency parties may file dispositive motions in an administrative

- 10 -

appeal, those filed by an agency carry particular significance. New Age asserts that if an agency does not file a dispositive motion within the time allowed under Rule 3:8, the circuit court must deem the case "submitted," forego ruling on any dispositive motion filed by a non-agency defendant, and initiate a review of the merits.

New Age contends that because the Board did not file a motion to dismiss "within the time provided by Rule 3:8," the appeal was "deemed submitted" pursuant to Rule 2A:5(3). In turn, once the case was "submitted," the circuit court could take no action except to receive the filing of the administrative record pursuant to Rule 2A:3 and establish a briefing schedule, as provided in Rule 2A:5(4). New Age argues that nothing in Rule 2A:5 authorized the circuit court to consider or grant a "pre-briefing challenge by a third-party respondent in the absence of a timely motion 'filed by the agency.'" We disagree.

Although Rule 2A:5(3) refers to "motions, demurrers or other pleas filed by the agency," the language merely triggers a series of procedural steps if a circuit court overrules a dispositive motion or no motion is filed: at that point the appeal is "deemed submitted," and the circuit court must establish a schedule for briefing and argument once the administrative record has been filed. Rule 2A:5(3), (4). Nothing in the Rule compels a circuit court to ignore a non-agency defendant's dispositive motion to dismiss. Additionally, Rule 3:8, authorizing *any* defendant in a civil action to file a dispositive pleading, does not conflict with Rule 2A:5. Neither Rule provides that a dispositive motion can only be filed by the agency.

Further, Dharma's status as a necessary party implies that it has authority to defend its interests by a motion to dismiss. See Browning-Ferris Indus. of S. Atl., Inc. v. Residents Involved in Saving the Env't, Inc., 254 Va. 278, 282 (1997). In Browning-Ferris, the Supreme Court found that a permit holder was a necessary party in an appeal brought by neighboring property owners challenging the permit. Id. The property owners could not bring the action against the agency

- 11 -

alone; the Supreme Court held that the permit holder "was a necessary party to the . . . appeal from the Department's ruling, because that ruling conferred specific rights on [the permit holder] which could be defeated or diminished by [the neighbors'] appeal." Id.

Likewise, because the Board's decision "conferred specific rights on [Dharma] which could be defeated or diminished by [New Age's] appeal," Dharma had authority to file the necessary pleadings to defend these rights. Id. Winning applicants or permit holders routinely file dispositive motions in administrative appeals brought by parties challenging an agency's decision. See, e.g., Health Sys. Agency of N. Va., Inc. v. Stroube, 47 Va. App. 299, 308 (2005) (noting that the "Commissioner and Community Hospital filed demurrers and motions to dismiss" the appellant's challenge to the approval of the certificate for public need; dismissal affirmed); Laurels of Bon Air, L.L.C. v. Med. Facilities of Am. LIV Ltd. P'ship, 51 Va. App. 583, 590, 601 (2008) (indicating that the appellees, which included the agency and nursing homes who were granted relocation approval, moved to dismiss an appeal brought by competitors; dismissal affirmed).

New Age also argues that because the circuit court did not enter an order granting the Board's motion to join Dharma's motion to dismiss, Dharma's motion was an impermissible "unilateral challenge" to New Age's petition for appeal. However, New Age never moved to strike the Board's motion to join, did not object to the Board's appearance at the June 7, 2019 hearing, and did not object before or after the circuit court allowed the Board to express its concurrence with Dharma at that hearing.

Further, New Age's assignment of error asserts only that the circuit court erred by considering Dharma's motion to dismiss, not that the circuit court erred by granting the Board's untimely motion to join Dharma's motion. Having framed the issue in this way, New Age waived any argument that the Board did not properly join Dharma's motion. See Rule 5A:18 (a party must state its objection "with reasonable certainty at the time of the ruling"). See also Dudley v. Estate

- 12 -

Life Ins. Co. of Am., 220 Va. 343, 348 (1979) ("Elementary is the rule of appellate procedure that the scope of argument on appeal is limited by the assignments of error."). Accordingly, we will not consider this argument on appeal. We conclude that the circuit court did not err by considering Dharma's motion to dismiss which the Board joined.

### 2. Grounds for granting the motion to dismiss

New Age asserts that "an agency may only challenge a circuit court's ability to hear an appeal . . . [if] there was a procedural defect in the filing of the petition for appeal or a lack of standing by the appealing party." This contention is incorrect. Dispositive motions may address jurisdictional issues such as standing or a failure to comply with technical filing requirements. See Reston Hosp. Ctr., L.L.C. v. Remley, 59 Va. App. 96, 107-15 (2011) (reversing dismissal of hospital's appeal for lack of standing, finding it sufficiently aggrieved by agency's decision to license competitor). However, an appellee also may test the legal sufficiency of a petition for appeal to determine if the appellant has failed to "designate . . . an error of law subject to review," as required by Code § 2.2-4027. See Clark, 281 Va. at 686-89 (holding that a reviewing court must examine not only the requirements of Rule 2A:4 but also the "statutes relevant to the appeal" in determining a preliminary dispositive motion), overruled in part on other grounds by Woolford, 294 Va. at 390 n.4.

Judicial review of administrative decisions is limited, and the judiciary cannot substitute its judgment for that of the agency. Boone v. Harrison, 52 Va. App. 53, 62 (2008). However, a circuit court may grant a motion to dismiss a petition for appeal without consideration of the entire administrative record when the appeal presents a pure question of law. See Va. Dep't of Health v. NRV Real Estate, L.L.C., 278 Va. 181, 185-89 (2009) (affirming circuit court's dismissal of petition for failure to demonstrate that the agency committed an error of law in following applicable healthcare statutes). Here, New Age's assignments of error to the circuit court were based on legal

interpretations of the Board's regulations, the RFA, and FOIA. Because New Age's petition presented questions of law, the circuit court properly considered the grounds stated in Dharma's motion to dismiss and determined that the assigned errors were "not sufficient to further appeal."

### 3. Dismissal without an evidentiary hearing

New Age contends that the circuit court erred in dismissing its appeal before conducting a full evidentiary hearing. Dharma responds that New Age's petition for appeal before the circuit court presented only questions of law as to whether the Board acted within the scope of its regulatory authority and did not require an evidentiary hearing.

In its assignments of error to the circuit court, New Age argued that the Board "failed to comply with regulatory authority," denial of New Age's application was "arbitrary and capricious," and the Board's "closed session violated [FOIA]."

### a. Whether the Board complied with regulatory authority

New Age argues that because 18 VAC 110-60-120(A) describes the application process as "competitive," the Board was required to grant conditional approval to the applicant that received the highest score from the ad hoc committee. However, the regulation provides that "the [*B*]*oard* shall evaluate each complete and timely submitted application and may grant conditional approval on a competitive basis based on compliance with requirements set forth in 18 VAC 110-60-110." 18 VAC 110-60-120(A) (emphasis added). 18 VAC 110-60-110(B) sets forth the information and documentation to be included in the application. Furthermore, 18 VAC 110-60-120(B) provides additional criteria the Board must use to evaluate the applications. Nothing in these regulations requires the Board to follow the recommendation of the ad hoc committee. To the contrary, the regulations require the Board to make an independent judgment using the criteria expressed therein. If the term "competitive" required the Board to blindly follow the scoring of the ad hoc committee,

as New Age suggests, then the other regulations regarding the Board's evaluation process would have no import.

The RFA, although not itself a regulation, is consistent with the regulations that the Board remained the ultimate decisionmaker. Regarding the award of conditional approval, the RFA specified that the ad hoc committee would make a recommendation to the Board based on its scoring of the applicants, but the Board would make the final decision based on its own opinion:

> After completing the review and scoring, the ad hoc committee will rank each application according to its score. The committee will *recommend* to the Board the issuance of conditional approval to an [a]pplicant in each [HSA] with the highest ranked score. . . . *The Board will grant conditional approval to the [a]pplicant(s) which, in its opinion, have made the best application.*

(Emphasis added).

The regulation describing the "competitive" process did not require the Board to automatically adopt the ad hoc committee's recommendation. See 18 VAC 110-60-120(A). Instead, the regulation authorized the Board to select an applicant from a pool of competitors after evaluating all criteria. See id. Because the petition for appeal and stipulated exhibits demonstrate that the Board evaluated the applications according to the regulations and required criteria, the circuit court did not err in dismissing this assignment of error without an evidentiary hearing. See NRV Real Estate, L.L.C., 278 Va. at 185-89.

b. Whether the Board's decision was arbitrary and capricious

New Age's second assignment of error to the circuit court asserted that the Board's decision granting conditional approval to Dharma was arbitrary and capricious. An agency decision is arbitrary and capricious "when it is 'willful and unreasonable' and taken 'without consideration or in disregard of facts or law or without determining principle,' or when the deciding body 'departed from the appropriate standard in making its decision.'" James v. City of Falls Church, 280 Va. 31,

- 15 -

42 (2010) (first quoting Sch. Bd. v. Wescott, 254 Va. 218, 224 (1997); then quoting Johnson v. Prince William Cty. Sch. Bd., 241 Va. 383, 389 n.9 (1991)).

Here, the findings in the Board's orders granting Dharma's application and denying New Age's application were directly tied to the regulations. The Board's order noted that New Age's "training opportunities for employees to protect against diversion, theft, or loss . . . lacked sufficient detail" and that its security plan was insufficient to determine compliance with specific regulatory requirements detailed in 18 VAC 110-60-240 through 18 VAC 110-60-270. Both findings correspond to the evaluation criteria set forth in the regulations. See 18 VAC 110-60-110(B)(1)(d); 18 VAC 110-60-120(B)(3), (4). The Board also critiqued New Age's marketing plan, which it considered pursuant to 18 VAC 110-60-110(B)(1)(i).

Likewise, the Board's order noted four areas where Dharma's application was particularly strong: location, industry expertise, financial position, and a compassionate care plan. These findings also specifically correspond to evaluation criteria set forth in the regulations. See 18 VAC 110-60-110(B)(1)(b), (c), (l), (m); 18 VAC 110-60-120(B)(2), (4).

Although a demurrer or motion to dismiss "admits the truth of the facts alleged," Philip Morris USA, Inc., 273 Va. at 572, a circuit court is not required to "accept the veracity of conclusions of law camouflaged as factual allegations or inferences," Parker v. Carilion Clinic, 296 Va. 319, 330 (2018) (quoting Coward v. Wellmont Health Sys., 295 Va. 351, 359 (2018)). The circuit court must "disregard allegations that 'are inherently impossible, or contradicted by other facts pleaded'" and reject "inferences [that] are strained, forced, or contrary to reason." Id. at 330 & n.2 (first quoting Ames v. Am. Nat'l Bank, 163 Va. 1, 37 (1934); then quoting Coward, 295 Va. at 358). Accordingly, when New Age claimed that the Board "completely disregarded the scoring committee's determination of the most qualified eligible applicant," the circuit court was free to consider the Board's orders and meeting minutes which indicated otherwise.

- 16 -

The General Assembly invested the Board with discretion in granting a limited number of pharmaceutical processor permits to operate cannabidiol/THC-A oil production and dispensary facilities in Virginia's five HSAs. See Code § 54.1-3442.6. Pursuant to this statutory authority, the Board issued regulations setting forth its evaluation criteria. Because the conclusions in the Board's orders expressly relate back to the governing regulations, New Age failed to demonstrate that the Board's decision was without a determining principle or that the Board departed from the appropriate decision-making standard. See James, 280 Va. at 42. It is apparent on the face of the Board's orders that the Board followed regulatory guidelines by considering the ad hoc committee's recommendation; it ultimately reached an independent conclusion that Dharma presented a superior application for HSA III. Therefore, the circuit court correctly concluded that the Board's decision "based on its [o]rders was not arbitrary or capricious but based on legitimate considerations that found Dharma to be the overall best choice."

c. Whether the Board violated FOIA

New Age argues that the circuit court erred in dismissing its claim that the Board violated FOIA by going into closed session. Because New Age failed to object to the decisions to go into closed session, we will not consider this assignment of error. See Rule 5A:18 ("[A]n objection [must be] stated with reasonable certainty at the time of the ruling.").

The September 25, 2018 meeting minutes demonstrate that after a public comment period, the Board and ad hoc committee retired into closed session to receive legal advice regarding FOIA and the consideration of applications for pharmaceutical processor permits. After reconvening in open session for public statements from Board members, the Board and ad hoc committee again went into closed session to consider and evaluate the applications. The Board ultimately voted on the applications during an open session. At no point during the meeting did New Age object to the Board's procedural actions.

"Principles of procedural default, analogous to those governed by Rule 5A:18, apply to agency decisions judicially challenged on appeal." French v. Va. Marine Res. Comm'n, 64 Va. App. 226, 232 n.2 (2015). An appellant "may not raise issues on appeal from an administrative agency to the circuit court that it did not submit to the agency for the agency's consideration." Pence Holdings, Inc. v. Auto Ctr. Inc., 19 Va. App. 703, 707 (1995). Here, New Age had both notice and opportunity to object to the convening of the closed sessions, and it did not do so. It first raised the issue in its appeal to circuit court. Accordingly, New Age's assignment of error was not properly preserved and is procedurally defaulted.

CONCLUSION

The circuit court did not err in considering the motion to dismiss filed by Dharma and joined by the Board. Additionally, the circuit court did not err in granting the motion prior to an evidentiary hearing due to New Age's failure to "designate and demonstrate an error of law subject to review," as required by Code § 2.2-4027 of the VAPA. Therefore, we affirm the dismissal of New Age's petition for appeal.

Affirmed.