COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Humphreys and O'Brien
Argued at Lexington, Virginia

**PUBLISHED**

BERGLUND CHEVROLET, INC.

OPINION BY
v.      Record No. 1322-19-3      CHIEF JUDGE MARLA GRAFF DECKER
APRIL 7, 2020

VIRGINIA DEPARTMENT OF MOTOR VEHICLES,
 RICHARD D. HOLCOMB, COMMISSIONER,
 VIRGINIA DEPARTMENT OF MOTOR VEHICLES,
 AND GENERAL MOTORS, LLC

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
William D. Broadhurst, Judge

Joseph M. Rainsbury (Kevin P. Oddo; Miles & Stockbridge P.C.;
Berglund Chevrolet, Inc., on briefs), for appellant.

Christian A. Parrish, Assistant Attorney General (Mark R. Herring,
Attorney General; Donald D. Anderson, Deputy Attorney General;
Julie M. Whitlock, Senior Assistant Attorney General, on brief), for
appellees Virginia Department of Motor Vehicles and Richard D.
Holcomb, Virginia Department of Motor Vehicles.

James C. McGrath (Edward V. Arnold; Seyfarth Shaw LLP, on
brief), for appellee General Motors, LLC.

Berglund Chevrolet, Inc. (Berglund), appeals the circuit court's decision to affirm an

administrative ruling approving the decision of General Motors, LLC (GM), to deny Berglund's

request for an increase in compensation for warranty repair work pursuant to Code § 46.2-1571.

Berglund contends that the circuit court erred by misinterpreting the statute and concluding that

GM had good cause to reject the request. For the reasons that follow, we hold that the circuit

court did not err. Consequently, we affirm the ruling.

## I. BACKGROUND[1]

Berglund is an authorized dealer of certain motor vehicles manufactured by GM. It is also authorized by GM to perform warranty repairs on qualified GM vehicles. The relationship between Berglund and GM is governed by both state law, which is administered by the Department of Motor Vehicles (DMV), and GM's sales and service agreement. See, e.g., Code § 46.2-1571 (requiring a written agreement between each manufacturer and dealer setting out respective rights and obligations regarding warranty service, subject to certain statutory provisions).

In 2017, Berglund submitted a request to GM pursuant to Code § 46.2-1571 to increase its hourly labor rate for warranty work from $117.04 to $178.31.[2] Berglund supported its request with written documentation that included work orders for 100 consecutive non-warranty repairs performed by Berglund. It attempted to extrapolate from each non-warranty repair what it would have been paid if the repair had been reimbursed at warranty repair rates. The documentation did not include work orders for warranty repairs.

GM denied Berglund's request for an increase on two grounds. First, it rejected Berglund's methodology of attempting to compare actual non-warranty retail amounts to "applicable warranty hours that *would have been paid* for the same type of repairs." (Emphasis added). GM asserted that Code § 46.2-1571 requires a comparison of actual charges, not "theoretical amounts." (Emphasis omitted). Second, the company noted that the proposed new labor rate for warranty repairs was almost twice the average charged by the seven other

---

[1] On appeal, this Court views the evidence "in the light most favorable to sustaining the [agency's] action." Lifecare Med. Transps., Inc. v. Va. Dep't of Med. Assistance Servs., 63 Va. App. 538, 544 (2014) (alteration in original) (quoting Nat'l Coll. of Bus. & Tech., Inc. v. Davenport, 57 Va. App. 677, 680 (2011)).

[2] Berglund originally requested a higher hourly rate. However, it amended its request during the proceedings based on GM's detection of errors in its calculations.

Chevrolet dealers in the area and consequently concluded that it was not reasonable under the statute.

Berglund sought review of the denial by the DMV, the agency charged with overseeing the applicable statutory scheme, under the Administrative Process Act. The DMV hearing officer heard evidence and argument and recommended the denial of Berglund's requested rate increase. He found that the hourly warranty labor rate at which Berglund was being paid, $117.54, was "the highest of any area GM dealer."

On Berglund's request for review of the DMV's initial denial, the Commissioner adopted most of the hearing officer's findings of fact. Like the hearing officer, the Commissioner concluded that Berglund's request should be denied. The Commissioner's rationale for the denial was based on both Berglund's faulty methodology and shortcomings in its data. He held in part that Berglund erred by using only non-warranty repair orders and merely *estimating* what it would have been paid for similar warranty work. He concluded that this methodology did not comport with the analysis in Navistar, Inc. v. New Baltimore Garage, Inc., 60 Va. App. 599 (2012). The Commissioner further concluded that GM had established good cause to deny Berglund's requested rate increase because, among other things, Berglund failed to provide actual amounts for its warranty work and admitted that the documentation it submitted contained errors.

Berglund filed a petition for appeal to the circuit court, which affirmed the Commissioner's decision. The court noted that Code § 46.2-1571(A)(3) requires that a request for an increase in dealer service compensation must be based upon 100 consecutive repair orders, not 100 consecutive *non-warranty* repair orders. It also agreed with the Commissioner's ruling that Berglund's request failed to compare actual amounts as instructed by Navistar.

## II.  ANALYSIS

Berglund raises four interrelated assignments of error in this appeal.  Two of the claims relate to the methodology by which it sought to prove entitlement to greater compensation for warranty work.  The other two claims involve whether GM had good cause to deny its request for an increase in warranty compensation.

### A.  Standard of Review

The Administrative Process Act, Code §§ 2.2-4000 to -4031, governs this appeal.  See Code §§ 2.2-4027, 46.2-1571(F).  "[W]ith respect to . . . issues of law" on appeal, the Court's duty under the Act is "to review the agency decision de novo."  Code § 2.2-4027.  It is also well established that "[p]ure statutory construction, a matter within the 'core competency of the judiciary,' requires *de novo* review."  Va. Emp. Comm'n v. Cmty. Alternatives, Inc., 57 Va. App. 700, 708 (2011) (quoting Citland, Ltd. v. Commonwealth ex rel. Kilgore, 45 Va. App. 268, 275 (2005) (citation omitted)).  "This axiom stems from basic principles of separation of powers. . . .  Virginia courts do not delegate th[is] task to executive agencies."  Finnerty v. Thornton Hall, Inc., 42 Va. App. 628, 635 (2004), quoted with approval in Cmty. Alternatives, 57 Va. App. at 708.

Questions of fact, by contrast, are reviewed under a substantial evidence standard.  See Code § 2.2-4027.  Substantial evidence is defined as "such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion."  State Health Comm'r v. Sentara Norfolk Gen. Hosp., 260 Va. 267, 275 (2000) (quoting Va. Real Est. Comm'n v. Bias, 226 Va. 264, 269 (1983)).  This Court "defer[s] to the agency" with regard to findings of fact, "just as [it] would [to] a jury or a trial court."  Citland, 45 Va. App. at 274.

The first set of issues raised by Berglund, pertaining to the methodology required under the statute, presents a question of statutory interpretation.  The second set of issues raised,

regarding whether GM had good cause to take an action for which the dealer filed a petition for a hearing, presents a mixed question of law and fact. Cf. Louis Latour, Inc. v. Va. Alcoholic Bev. Control Bd., 49 Va. App. 758, 774 (2007) (categorizing the issue of whether a winery had good cause to amend a franchise agreement as a mixed question of law and fact).

### B. Methodology Supporting Request for Labor Rate Increase

Berglund challenges the conclusion that Code § 46.2-1571(A)(3) requires a dealer requesting an increase in compensation for warranty work to include warranty repair orders in the sample of repair orders evaluated. It also contests the related ruling that a dealer is required to compare actual warranty-work payments with actual non-warranty-work payments.

Code § 46.2-1571 expressly provides that a manufacturer's "[c]ompensation of a dealer *for . . . warranty . . . service . . .* shall not be less than the amounts charged by the dealer for the manufacturer's . . . service . . . work *to retail customers for nonwarranty service . . .* unless the amounts are not reasonable." Code § 46.2-1571(A)(1) (emphases added). The code section also states that "[i]ncreases" in compensation for dealer warranty service "shall be requested . . . in writing" and "based on 100 consecutive repair orders or all repair orders over a 90-day period, whichever occurs first." Code § 46.2-1571(A)(3). The statute does not further delineate the types of repair orders to be included or specify whether the 100 consecutive orders should include both warranty and non-warranty repairs.

Settled principles provide that a court must apply the plain language of a statute unless the language is ambiguous. See, e.g., Volkswagon of Am., Inc. v. Smit, 266 Va. 444, 452 (2003), cited with approval in Navistar, 60 Va. App. at 609. A court may not "add to the words" of a statute. Baker v. Commonwealth, 278 Va. 656, 660 (2009) (quoting Farrakhan v. Commonwealth, 273 Va. 177, 181 (2007)).

The plain language of the statute at issue refers to "100 consecutive repair orders." Code § 46.2-1571(A)(3). This language is unambiguous and does not limit the type of orders to non-warranty orders. Thus, under the statute, Berglund was required to submit data for 100 consecutive repair orders, without distinction, rather than 100 consecutive *non-warranty* repair orders. See also Navistar, 60 Va. App. at 611-12 (interpreting the same statute to require, in a different but related context, the use of information regarding both warranty and non-warranty work for comparison purposes). The language "100 consecutive repair orders" means exactly what it says. This Court will not add words to this already clear phrase in the statute. See Baker, 278 Va. at 660.

With regard to a dealer's request for an increase in labor compensation for warranty repairs, the statute does not explain what the dealer must do with the 100 consecutive orders specified by the statute to determine whether it is being compensated for warranty work in "amounts" equal to or greater than the "amounts" it is receiving for non-warranty work. Additionally, neither this Court nor the Supreme Court of Virginia has directly addressed this issue.

However, this Court considered a related issue in Navistar. In that case, the Court addressed the provisions of Code § 46.2-1571(A) regarding the manufacturer's ability, subject to certain limitations, to "charge[] back" to the dealer any amounts which it determines it has overpaid for various things, including warranty service compensation. 60 Va. App. at 611-12. In deciding that case, the Court drew on language in the statute that it held was applicable not only to chargebacks but also to requests for increases in labor compensation for dealer warranty work. Id. at 611, 616-17.

Navistar analyzes the controlling statutory subdivision, (A)(1), which instructs that "[c]ompensation of a dealer for . . . warranty . . . service . . . shall not be less than the amounts

charged by the dealer . . . to retail customers for nonwarranty service . . . unless the amounts are not reasonable." Code § 46.2-1571(A)(1). The decision in Navistar expressly sets out the "series of concrete steps" "require[d]" by subsection (A) of the statute "to compare warranty compensation with non-warranty compensation" in order to "ensure that compensation for warranty work is 'not less than' compensation paid by retail customers." Navistar, 60 Va. App. at 611. The Court in Navistar also explained that the statute contemplates several different events that require this same analysis. Id. at 616-17. Those events include not only a manufacturer's request for chargebacks, as in Navistar, but also a dealer's "application[] for [an] increase[] in service compensation" under subsection (A)(3), the provision under which Berglund seeks an increase. See id.

Once the relevant data set is obtained, the remaining three additional requirements must be met to complete the four-step test set out in Navistar.[3] Id. at 611-12. The second step requires separate calculations of "the total billing for the warranty work performed for the manufacturer . . . for the relevant period" and "the total billing for non-warranty work" for the same period. Id. at 612. For the third step, the dealer should exclude statutorily specified charges from the total. Id. Fourth, "compensation amounts" are calculated by dividing the warranty and non-warranty amounts "by the number of labor hours expended during the applicable time frame." Id.

---

[3] Berglund contends that Navistar does not apply here because it was a "chargeback" case and any reference to rate increase requests was *dicta*. We reject Berglund's assertion. In deciding Navistar, the Court was required to consider the meaning of the "amounts" language in subsection (A)(1), which applies in both types of cases. 60 Va. App. at 616-17. Regardless of whether a manufacturer seeks to recoup a claimed overpayment, as in Navistar, or a dealer requests a prospective increase, like Berglund's request here, the formula requires the inclusion of both warranty and non-warranty work. Id. at 611, 616-17. The only difference between manufacturer chargebacks and dealer increase requests concerns the data set from which the statutory "amounts" are calculated. See Code § 46.2-1571(A), (A)(3); Navistar, 60 Va. App. at 606 n.1, 612.

As instructed by <u>Navistar</u>, therefore, the proper method for documenting Berglund's request was to compile 100 consecutive orders, including both non-warranty and warranty orders, from which to calculate the respective total amounts paid for each category of work. <u>See</u> Code § 46.2-1571(A)(3); <u>Navistar</u>, 60 Va. App. at 612. The calculations of these amounts must include the additions listed in <u>Navistar</u>'s step two and the exclusions listed in <u>Navistar</u>'s step three. <u>See</u> <u>Navistar</u>, 60 Va. App. at 612. Finally, in step four, each amount must be "divided by the number of labor hours expended during the applicable time frame" in order to "allow . . . a meaningful comparison of the hourly compensation amounts of warranty and non-warranty work." <u>Id.</u> at 612-13; <u>see also</u> <u>id.</u> at 612 (recognizing that this method applies even if warranty and non-warranty work are "billed in different ways," which in <u>Navistar</u> involved a warranty work "cap that d[id] not apply to non-warranty work").

A thorough review of the applicable statutory framework and case law leads to the conclusion that the circuit court did not err in affirming the Commissioner's ruling regarding Code § 46.2-1571(A)(3). That ruling requires a dealer requesting an increase in compensation for warranty work to compile "100 consecutive repair orders," with whatever distribution of warranty and non-warranty repair orders that grouping happens to contain. It further requires the dealer to separately total the actual warranty-work and actual non-warranty-work payments within that sample, in order to obtain rates for each in compliance with <u>Navistar</u>.[4] Here, instead, the data that Berglund used in its calculations comprised only non-warranty repairs. Berglund did not present the necessary 100 consecutive repair orders required by the statute. The warranty repair data against which Berglund made its comparison was hypothetical data extrapolated from non-warranty repairs rather than actual warranty repair data obtained from consecutive work

_____

[4] Based on this conclusion, we do not reach GM's contention that Berglund's interpretation of Code § 46.2-1571 would render the statute unconstitutionally vague.

- 8 -

orders.  Cf. Navistar, 60 Va. App. at 614 (in calculating compensation paid in a chargeback case, rejecting a method that involved multiplying actual figures for a one-month period by twelve to merely "approximat[e]" the compensation paid for one year).  Consequently, the circuit court did not err in affirming the Commissioner's ruling that Berglund's calculations did not meet the requirements of the statute.

### C.  Good Cause for Denial of Increase

Berglund further asserts that the circuit court erred in upholding the Commissioner's conclusion that GM had good cause to deny its request for an increase in warranty compensation. It also suggests that the circuit court's "good cause" error was compounded to the extent that it relied upon the Commissioner's "f[inding] that Berglund's request sought an unauthorized 'markup' for warranty work."

Code § 46.2-1573(A) specifically provides that when a motor vehicle dealer requests a hearing before the Commissioner, "the manufacturer . . . shall have the burden of proving by a preponderance of the evidence that the manufacturer . . . has good cause to take the action or actions for which the dealer has filed the petition for a hearing or that such actions are reasonable if required under the relevant provision."  Applying this standard, the circuit court affirmed the Commissioner's conclusion that GM had good cause to deny Berglund's request for an increase in the labor rate for warranty work.

Berglund asserts that the circuit court and Commissioner based their conclusions on three things:  (1) Berglund's "improper omission of warranty orders [from] the 100-repair-order sample"; (2) Berglund's flawed "methodology for computing an adjusted warranty labor rate"; and (3) "errors and omissions in the data contained in Berglund's . . . request."

Berglund suggests that these things are not relevant to GM's decision to deny the increase because GM did not rely upon them in rejecting Berglund's request.  This argument is flawed

because, as discussed in more detail below, the first two rationales relied upon by the Commissioner and the circuit court clearly focus on the first factor upon which GM's rejection letter relied. Additionally, these rationales, taken together, provide a proper legal justification for the denial of Berglund's request.

Berglund first alleges that GM denied the claim because "Berglund did not base its calculation on actual amounts charged to customers."

This claim about GM's basis for its denial is refuted by the record. GM's letter expressly recognized Berglund's use of actual amounts charged to customers—non-warranty ("retail") amounts—for some of its calculations. GM objected only to Berglund's failure to use actual amounts charged *for warranty work*. GM criticized Berglund's use of "theoretical amounts that 'would have been paid'" to represent the statutorily required warranty repair amounts charged to GM. In fact, it is undisputed that Berglund's figures for warranty work were estimated figures only. Consequently, the record makes clear that GM denied the claim based on Berglund's failure to provide actual work orders for *warranty* repairs—not, as Berglund claims on appeal, based on a failure to provide *any* "actual amounts charged to customers."

Furthermore, GM's basis for denial that Berglund failed to include warranty repair orders was likewise the primary reason that the Commissioner and the circuit court concluded that Berglund's methodology for computing an adjusted warranty labor rate was flawed. Consequently, GM's first stated reason for denying the request for a warranty labor rate increase was in fact one of the same bases upon which the Commissioner relied to conclude that GM had good cause for the denial. This conclusion was not error.[5]

---

[5] Berglund also alleges as part of this claim that GM erroneously denied the increase because the proposed rate for *warranty* work was "unreasonable." Berglund argues that the statute permits rejection of such a request only if the amounts charged for *non-warranty* work are unreasonable. We do not examine this claim because, as discussed above, the circuit court affirmed the Commissioner's conclusion that GM's first basis for denial was justified under the

Berglund's second assignment of error relating to the good cause analysis challenges the ruling of the circuit court and the Commissioner "to the extent that they found that Berglund's request sought an unauthorized 'markup' for warranty work." However, Berglund concedes that the record does "not [make] clear" that the circuit court or the Commissioner "relied on this 'markup' argument when finding that GM had good cause to reject Berglund's request."

An appellant bears the burden of providing an adequate record from which the appellate court can review its claimed assignments of error. See Clarke v. Commonwealth, 60 Va. App. 190, 199 (2012) (refusing to entertain the defendant's claim that the trial court erred by considering particular evidence in part because the record "provide[d] no basis for concluding" that it had done so). Absent citation by Berglund to any portion of the record indicating that the circuit court or Commissioner relied on this argument, we do not evaluate whether any hypothetical reliance might have been error.

### III. CONCLUSION

We hold that the circuit court did not err in affirming the Commissioner's ruling. Code § 46.2-1571, as previously interpreted by this Court, required Berglund to compare amounts of actual non-warranty claims to amounts of actual warranty claims, not to hypothetical figures designed merely to estimate amounts for warranty claims similar to the actual non-warranty claims. Further, the circuit court did not err in upholding the Commissioner's conclusion that GM had good cause to deny Berglund's request for an increase in its warranty labor rate. Consequently, we affirm the challenged rulings.

Affirmed.

---

statute and we have concluded that the rationale applied was valid. See generally Commonwealth v. Swann, 290 Va. 194, 196-97 (2015) (applying best and narrowest ground principles).